James W. CHAMBERS, Appellant,

v.

STATE of Missouri, Respondent.

No. 52910.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer
Denied Feb. 4, 1988.

Application to Transfer Denied
March 15, 1988.

Thomas R. Schlesinger, Chesterfield, for appellant.

William L. Webster, Atty. Gen., Jared R. Cone, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Movant James W. Chambers appeals after the denial of his Rule 27.26 motion following an evidentiary hearing. We affirm.

Appellant was convicted of capital murder for which he was sentenced to death. On direct appeal following his original trial, the Missouri Supreme Court reversed appellant's conviction and ordered a new trial on grounds the trial court refused appellant's tendered self-defense instruction when there was sufficient evidence of self-defense to warrant submission of the issue to the jury. *State v. Chambers,* 671 S.W. 2d 781 (Mo. banc 1984) [hereinafter cited as *Chambers* I].

On retrial, appellant did not adduce the evidence of self-defense presented in the first trial. Accordingly, the trial court refused appellant's tendered instruction on self-defense. Appellant was again convicted of capital murder and sentenced to death. On direct appeal, the Missouri Supreme Court upheld appellant's conviction concluding the evidence presented at appellant's second trial did not justify a self-defense instruction. *State v. Chambers,* 714 S.W.2d 527 (Mo. banc 1986) [hereinafter cited as *Chambers* II].

In his motion seeking relief under Rule 27.26, appellant contends he was denied effective assistance of counsel in that counsel who represented appellant during his second trial failed to interview and call crucial witnesses who could have testified in appellant's behalf.

A full statement of the facts surrounding appellant's conviction is given in the opinion on direct appeal. *Chambers* II, *supra.* In brief, the evidence showed appellant went to a lounge in Arnold, Missouri and sought out the victim. Appellant initiated an argument with the victim and coaxed the victim to settle the matter outside of the establishment. Appellant departed the establishment first and drew a handgun on his way out. As the unarmed victim exited the lounge, appellant struck the victim over the head with the gun. The victim rose to his feet with his hands in the air. Appellant fired a single shot into the victim's chest. Appellant then proceeded to pistol whip the victim, dragged the victim across the parking lot, and taunted him. Thereafter, appellant ran to the passenger side of an awaiting automobile and fled the scene. Following the incident, a pair of needle-nosed pliers was found lying next to the victim's body. The owner of the lounge, however, testified the pliers were his and had dropped from his pocket after the incident when he reached for a handkerchief while standing over the victim's body.

The State's theory of the case under the capital murder submission was that appellant intended to cause the death of the victim and reflected upon the matter cooly and fully before doing so in that appellant sought out the victim, appellant drew a handgun and waited for the unarmed victim to exit the establishment, and appellant had a getaway car waiting so that he could quickly flee the scene.

At the 27.26 motion hearing, appellant's counsel from his second trial testified it was his trial strategy to undermine the credibility of the state's witnesses and to suggest the victim had a pair of needle-nosed pliers in hand at the time of the incident in order to get a self-defense instruction.

At appellant's first trial, a witness, Jim Jones, was called to testify in appellant's defense. Jones was not called to testify at appellant's second trial. It was this witness' testimony that was central to the Supreme Court's decision in *Chambers* I,

*supra,* requiring reversal on grounds the trial court failed to instruct on self-defense where the instruction was warranted. Jones testified during the first trial that he was in the parking lot of the lounge on the night in question and witnessed the shooting. It was Jones' testimony that the victim struck appellant first, appellant fell backwards and as appellant was rising to his feet, he shot the victim.

On cross-examination, however, Jones testified to facts adverse to appellant's case. Jones substantiated the state's case that appellant had the handgun drawn before the victim exited the lounge and that the victim was unarmed. Moreover, Jones testified the victim was six feet away from appellant and was not advancing towards appellant when appellant fired the shot. Jones also testified that appellant pistol whipped the victim and told the victim to "lay there and die." Jones' testimony also supported the state's theory of a getaway car as Jones testified the vehicle in which appellant fled the scene was waiting in the parking lot the entire time with the engine running and was parked in a position facing out towards the exit.

At the motion hearing, appellant's counsel acknowledged he did not interview Jones but did read the transcript of his testimony from the first trial. Counsel considered Jones' testimony very damaging to appellant and concluded Jones, for impeachment purposes, was locked into his testimony from the first trial. Counsel testified further that appellant was emphatic about the decision not to call Jones and signed a statement to that effect. The signed statement was introduced at the motion hearing. In that statement appellant agreed Jones should not be called as a witness and acknowledged that failure to call Jones might prevent appellant from receiving a self-defense instruction.

Donald Chapman, the driver of the vehicle in which appellant fled the scene of the crime, did not testify at either of appellant's trials. Chapman, a first cousin of appellant, was arrested in connection with the murder for driving the getaway car. Chapman gave recorded statements to the police after the incident. At the motion hearing, Chapman testified he witnessed the incident from the rear window of the automobile. It was Chapman's testimony that the victim struck appellant first, hitting appellant in the face and knocking him backwards. Appellant then jumped up, the two men struggled, and a shot went off.

Appellant's counsel acknowledged he did not interview Chapman. Counsel, however, did have transcripts of the statements Chapman made to the police. Counsel found these statements damaging and did not consider Chapman a credible witness in light of the fact he was arrested in connection with the incident.

At appellant's second trial, Deputy Sheriff Kentch testified that while appellant was in custody the deputy accompanied appellant to an appointment with an eye doctor. While in the waiting room of the doctor's office, appellant made statements the substance of which were that he had killed a man in Arnold and would kill two police officers if given the opportunity.

At the motion hearing, a patient who was at the doctor's office testified he was present when appellant was brought into the waiting room but did not hear appellant make the statements the deputy testified to. The patient acknowledged, however, that he had a hearing problem and was present in the waiting room with appellant no longer than five minutes.

At the motion hearing, appellant's former counsel testified he did not interview the employees or patients of the doctor. Counsel testified further that he was made aware of the incident by the prosecution through discovery only one week before trial. Counsel interviewed Deputy Kentch and found him credible. He spoke with appellant and appellant gave counsel the name of a deputy who was allegedly present at the doctor's office and would contradict Deputy Kentch. Counsel's preliminary investigation revealed this deputy was not present at the doctor's office with appellant and Deputy Kentch. Counsel testified he thereafter made the decision to spend the last few days before trial on other matters pertaining to appellant's de-

fense. Counsel testified appellant had sent counsel on wild goose chases in the past and considered this another such incident. Counsel, however, did file a motion in limine to prohibit Deputy Kentch's testimony and cross-examined the deputy at trial as to why he never prepared a full report of the incident.

The motion court concluded that counsel's decision not to call Jones and Chapman was based upon trial strategy and was supported by reasonable professional judgment. As to counsel's failure to investigate witnesses who could have rebutted Deputy Kentch's testimony, the court concluded appellant was not prejudiced as the deputy's testimony was cumulative in that appellant never denied he killed the victim and that was the substance of appellant's alleged statements. Moreover, the court concluded there was no evidence that any of the doctor's employees or patients would have contradicted the deputy's testimony.

Appellant contends on appeal the motion court was clearly erroneous in overruling appellant's 27.26 motion on grounds he was denied effective assistance of counsel by trial counsel's failure to interview witnesses Jones and Chapman and failure to locate and interview witnesses from the eye doctor's office.

■ On appeal, our review is limited to whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j). The credibility of the witnesses is for the motion court's determination and the court may reject testimony even though no contrary evidence is offered. *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986).

■ There is a strong presumption that counsel is competent, and to establish ineffective assistance of counsel, appellant must demonstrate that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances and that he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 105 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Martin v. State*, 712 S.W.2d 14, 16 (Mo. App.1986).

■ Trial counsel does have a duty "to make reasonable investigations or *to make a reasonable decision that a particular investigation is unnecessary.*" *Martin, supra.* (emphasis added). A decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland, supra,* 466 U.S. at 691, 104 S.Ct. at 2066. Moreover, when a defendant gives counsel a reason to believe that pursuing certain investigations would be fruitless, failure to pursue the investigations may not later be challenged as unreasonable. *Id.*

■ Further, *if it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, it is appropriate for the motion court to proceed directly to the issue of prejudice without first determining whether counsel's conduct was deficient.* *Richardson, supra,* at 915–16; *Strickland, supra,* 466 U.S. 697, 104 S.Ct. at 2069. In order to satisfy the prejudice requirement, appellant must show "there is a reasonable probability that, absent the alleged error, the fact finder would have had a reasonable doubt respecting guilt." *Richardson, supra,* at 916. As to a claim that an attorney failed to adequately investigate a case, it must be shown the witnesses could have been located through reasonable investigation, would have testified if called, and that the testimony would have aided or improved defendant's position. *Franklin v. State*, 655 S.W.2d 561, 565 (Mo.App.1983); *Simons v. State*, 719 S.W. 2d 479, 480 (Mo.App.1986).

■ As to the failure to interview and call as witnesses Jones and Chapman, the motion court concluded counsel's actions were supported by reasonable professional judgment. Counsel had the benefit of Jones' recorded testimony from the first trial. Jones' testimony on cross-examination directly supported the State's theory of the case under the capital murder submission. In counsel's professional opinion the disadvantages of Jones' testimony outweighed the advantages. Appellant assented to this trial strategy and signed a statement attesting to this fact. Counsel felt no need to individually interview Jones

as any deviation in Jones' testimony from that given at the first trial would have been subject to impeachment.

Counsel, likewise, had the benefit of transcripts of the statements Chapman made to police officers after his arrest. Counsel found these statements contradictory and damaging to appellant. Chapman would have been subject to impeachment by these statements if his testimony would have differed therefrom. Moreover, in counsel's professional judgment, Chapman would not have been a credible witness due to his arrest in connection with the incident. We agree with the motion court that counsel's investigation of potential witnesses Jones and Chapman was reasonable under the circumstances and constituted deliberate trial strategy, not a failure to investigate.

■ The trial court concluded that failure of counsel to investigate further the incident at the eye doctor's office was not sufficiently prejudicial to appellant. We agree but also conclude that reasonable professional judgment supported the limitations on counsel's investigation. With only one week left before trial, appellant sent counsel on a false lead as to the deputy appellant claimed was present during the incident. Moreover, appellant had sent counsel on similar false leads in the past. At the motion hearing, the court found appellant to be "not at all credible." By such conduct appellant gave counsel a reason to believe that pursuing the investigation would have been fruitless.

■ Furthermore, we agree with the motion court that appellant did not satisfy the prejudice requirement as there was no evidence that any witness could have contradicted Deputy Kentch's testimony.

We conclude the findings, conclusions, and judgment of the motion court are not clearly erroneous. Judgment affirmed.

STEPHAN, P.J., and PUDLOWSKI, J., concur.