APPENDIX A

STATE of Missouri, Respondent,

v.

Brian Keith FRANKLIN, Appellant.

Nos. WD 43533, WD 45588.

Missouri Court of Appeals,
Western District.

March 9, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 27, 1993.

Application to Transfer Denied
June 29, 1993.

**440**

Anthony C. Cardarella, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

Brian Keith Franklin appeals from a conviction of two counts of robbery in violation of § 569.020, RSMo 1986, two counts of armed criminal action in violation of § 571.-015, RSMo 1986 and denial of his 29.15 motion. Franklin was sentenced as a prior, persistent and class X offender to a term of life imprisonment on the robbery convictions and a term of thirty years on each of the armed criminal action convictions. Franklin's sentences were ordered to run consecutively.

The evidence adduced at trial revealed that on Sunday, September 6, 1987, at approximately 9:00 a.m., defendant and two other males entered a Western Auto store located in Clay County, shortly after it had opened that morning. The men entered the store through open garage doors behind the store. The men displayed handguns and ordered all persons in the store onto the floor. Defendant ordered Tony Curtis, assistant manager of the store, to take defendant to the store's safe and to unlock the safe. After taking the money in the safe, and robbing one of the customers at gunpoint, the men ran out of the store.

Three of the employees had the opportunity to observe defendant and later identified him as one of the participants in the robbery. During the entire incident, Tony Curtis was at defendant's side and observed him closely. He reported to police that defendant wore a blue shower cap. Mr. Curtis identified defendant as the robber who ordered him to open the safe. Ken Shockley, a mechanic employed at the Western Auto store, had only a glimpse of defendant while inside the store, but had seen him clearly when he pulled up to the store that morning as the three robbers stood outside the back of the store waiting for it to open. At trial, Mr. Shockley identified defendant as one of the robbers.

Dallas Engel, a parts salesman, also observed defendant during the incident and identified defendant during trial.

In an attempt to identify the robbers during the initial investigation, police showed the witnesses photographs two weeks after the robbery. At that time, none of the witnesses identified defendant as being a participant in the robbery. About a month later, police showed the witnesses an audio-video lineup. From viewing the men in the lineup and hearing each one of them speak, Curtis, Shockley and Engel all identified defendant as the robber who had worn the blue shower cap and had ordered the opening of the safe. Defendant was convicted of all charges. Defendant appeals from these convictions, along with the denial of his 29.15 motion.

### Ineffective Assistance of Counsel

In his first three points on appeal, Franklin argues that the motion court clearly erred in denying his motion for post-conviction relief because he was denied his right to effective assistance of counsel as guaranteed by the sixth and fourteenth amendments to the United States Constitution and Article I, § 18(a) of the Missouri Constitution. Franklin claims he was denied effective assistance of counsel based on the following grounds: (1) defendant's attorney failed to adequately impeach the identification testimony of state eyewitnesses; (2) defendant's attorney failed to fully contact and interview the defense alibi witnesses; and (3) the trial court allowed defendant to proceed *pro se* while refusing his request for a six week continuance.

■ Appellate review of the denial of a Rule 29.15 motion is confined to the issue of whether the findings of fact and conclusions of law of the motion court are clearly erroneous. *State v. Anderson*, 785 S.W.2d 596, 600 (Mo.App.1990). The motion court's determination is clearly erroneous only if after reviewing the entire record, the appellate court has a definite and firm

impression that a mistake has been made. *Id.*

■ To establish ineffective assistance of counsel, defendant must satisfy the *Strickland* two-prong test, showing (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and (2) that defendant was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Review begins with the presumption that counsel is competent and movant has the "heavy burden" of proving counsel's ineffectiveness by a preponderance of the evidence. *Amrine v. State*, 785 S.W.2d 531, 534 (Mo. banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Finally, appellant must show that a different outcome would have resulted but for counsel's errors in order to show that he was prejudiced by such errors. *Sanders v. State*, 738 S.W.2d 856, 860–61 (Mo. banc 1987).

■ It is also important to note that ineffective assistance of counsel claims relating to "trial strategy" do not provide a basis for post-conviction relief. *Rainwater v. State*, 770 S.W.2d 368, 370 (Mo.App. 1989). Counsel is vested with wide latitude in defending his client and should use his best judgment in matters regarding trial strategy. *Stuckey v. State*, 756 S.W.2d 587, 593 (Mo.App.1988). Additionally, courts reviewing such claims should refrain from employing hindsight when reviewing counsel's conduct at trial. *State v. Lewis*, 785 S.W.2d 656, 660 (Mo.App.1990). Each of defendant's ineffective assistance of counsel claims will be addressed individually.

### Identification of Eyewitnesses

■ Franklin's first point on appeal is that the motion court erred by denying him relief on his ineffective assistance of counsel claim alleging that trial counsel failed to professionally and adequately impeach the identification testimony of State eyewitnesses. Defendant argues that his ap-

pointed counsel was in possession of police investigative reports containing relevant impeachment information and that she failed to inform the jury of the impeachment information which could have helped defendant's defense. Defendant claims that his counsel's performance denied him his right to effective assistance of counsel.

Essentially, defendant contends that the jury was never informed that the eyewitnesses had initially chosen photographs of Kim Milligan and/or Edward Robinson as depicting possible participants in the robbery and that these two men were in custody on the date of the robbery. The same eyewitnesses later positively identified defendant in an audio-video taped lineup and in court during the trial as one of the participants in the robbery. Accordingly, defendant argues that his counsel was under a constitutional duty to impeach the testimony of Curtis, Shockley and Engel by putting forth evidence of the incarceration of Milligan and Robinson.

■ Generally, the presentation of witnesses by an attorney on behalf of his client and the introduction of cumulative evidence are considered matters of trial strategy, which is not a proper basis for an ineffective assistance of counsel claim. *Johnson v. State,* 776 S.W.2d 456, 458 (Mo. App.1989). To prevail on his claim, defendant is required first to show that counsel's failure to present the impeachment evidence was outside the realm of trial strategy. *Terry v. State,* 770 S.W.2d 723, 724 (Mo.App.1989). Next, defendant must establish that the evidence would have provided a viable defense. *State v. Vinson,* 800 S.W.2d 444, 448–49 (Mo. banc 1990).

We do not believe that counsel's actions in this case fall outside of the realm of trial strategy. Nor do we believe the introduction of such evidence would have helped defendant's defense. Defendant was identified by the eyewitnesses at a different time from the identification of Milligan and Robinson. At the time of the witnesses' identification of defendant, the witnesses

viewed an audio-video taped lineup, which differs markedly from viewing mug shots, as was done at the time of the identification of Milligan and Robinson. Furthermore, counsel did cross-examine each witness on the identification of Milligan and Robinson. At least one of the witnesses, Mr. Engel, identified both Milligan and Robinson as participants in the crime. This was elicited during cross-examination. Counsel also clearly pointed out that defendant's photo was among the photos shown to the eyewitnesses at the same time Milligan and Robinson were identified, and that defendant was not identified by any of the eyewitnesses at that time. There was no contention by the State that Milligan and Robinson were the accomplices of defendant,[1] and it was evident from the testimony that the witnesses had misidentified Milligan and Robinson. Thus, we see no manner in which defendant's defense would have been enhanced by such evidence. Therefore, the motion court's ruling on this point was not clearly erroneous. Point I is denied.

### Interview of Alibi Witnesses

■ Franklin's second point on appeal is that the motion court erred in denying relief on his ineffective assistance of counsel claim alleging that his counsel failed to fully, properly and professionally contact and interview the defense alibi witnesses prior to trial. Specifically, defendant claims that one of his alibi witnesses, Tony Handson, was never contacted by defense counsel or her office before he testified at defendant's trial. Defendant claims that trial counsel's failure in this regard denied him his right to effective assistance of counsel.

During the course of defendant's trial, defense counsel called numerous alibi witnesses on behalf of defendant, all of whom were defendant's friends and family. Each of these alibi witnesses testified that defendant had been at a family picnic on the same day of the robbery. The testimony of

---

**1.** Witness Engel, for instance, identified Milligan or Robinson as being the robber wearing the shower cap when he viewed the photographs. At trial, all three witnesses contended that defendant was the robber in the shower cap.

the first thirteen witnesses presented regarding when defendant arrived at the picnic ranged from 8:05 a.m. to 10:00 a.m. The Western Auto robbery occurred around 9:00 a.m. Defense counsel then presented a fourteenth witness, Tony Handson, the son of defendant's girlfriend. Handson testified that he, his mother and defendant arrived at the family picnic in the afternoon, in contrast to all the preceding testimony stating defendant arrived in the morning. Defendant contends that the elicitation of Handson's testimony that defendant did not arrive at the family picnic until afternoon shows that trial counsel did not investigate and interview Tony Handson prior to presenting his testimony. Defendant contends this failure constituted ineffective assistance of counsel.

As stated previously, this court reviews defendant's second point under a "clearly erroneous" standard, to determine whether the motion court's findings and conclusions on this point are "clearly erroneous." *State v. Vinson,* 800 S.W.2d 444, 448 (Mo. banc 1990). Defendant is required to establish that his counsel performed below reasonable standards of competence and that the deficient performance prejudiced defendant's trial. The trial court is free to believe all, part or none of movant's evidence and may totally reject movant's evidence even if no contrary evidence is presented for the motion court's consideration. *Chambers v. State,* 745 S.W.2d 718, 721 (Mo.App.1987).

At defendant's post-conviction relief hearing, Mr. Handson testified that he was never interviewed by defendant's counsel before testifying at trial. Trial counsel testified that she did not remember whether she talked to Handson before the day of trial or whether Mr. Armstrong, her investigator, talked to him, but that he was interviewed by one of them when he was served with a subpoena ordering him to testify. In the motion court's findings of fact, the court made the following finding:

> With regard to the claim that movant's trial counsel failed, neglected and refused to obtain depositions and transcripts from both state witnesses and alibi witnesses, it is found that defense

counsel did not take any depositions and did not interview any witnesses, state or defense, in a manner that permitted transcripts to be made of the interview. *Defense counsel, or some other member of the Public Defender's staff, interviewed all witnesses called by the State or the defense.* The unexpected testimony from alibi witness Tony Handson did not result from any failure of defense counsel. The facts found do not constitute ineffective assistance of counsel....

(emphasis added).

Counsel could not recollect whether she had personally contacted Handson or whether her investigator had contacted him. However, she indicated that either she or her investigator had interviewed him. She understood that Mr. Handson, Mr. Handson's mother, and defendant all arrived together at the picnic. Mr. Handson's mother, who testified at the post-conviction hearing, admitted she had been interviewed concerning the facts of her testimony. Additionally, trial defense counsel testified that she talked to all the witnesses together before the trial about the kinds of questions she would be asking them during their direct examination. She stated that, of course, she did not tell the witnesses what to say.

The motion court, as previously stated, is free to believe all, part or none of any witness' testimony. *Chambers,* 745 S.W.2d at 721. It is possible that Handson, in giving his testimony at trial, was innocently mistaken about the time of day defendant arrived at the picnic. It is also possible he was "out of synch" about the time defendant arrived at the picnic because the alibi was concocted. At the post-conviction hearing, when Mr. Handson was asked on cross-examination what testimony he gave at the trial, he stated that he had absolutely no memory concerning his trial testimony. He did not explain why he had no memory concerning his testimony. Thus, no explanation was offered by defendant as to why Mr. Handson's testimony differed from that of his mother and others. Since defendant offered no such explanation, the post-conviction court could have inferred

that the alibi was concocted. Counsel for defendant cannot be charged with ineffective assistance of counsel when the reason that witnesses contradict each other is because they are lying. Counsel cannot be accused of lack of diligence for assuming that Mr. Handson's testimony would be consistent with that of his mother and the other alibi witnesses. Counsel should not be required to review every aspect of the testimony of every proposed witness. When witnesses are telling the truth, there are seldom any glaring inconsistencies which the jury cannot attribute to innocent misperceptions or misunderstandings.

Mr. Handson's credibility is greatly undermined by his statement at the post-conviction hearing that he could not remember what he testified about at trial. This, of course, prevented the prosecution from examining him about the details of his trial testimony, and the reason for the inconsistencies. Further, his credibility could have suffered as a result of the following exchange which took place during the post-conviction hearing at the beginning of the redirect examination by the post-conviction defense counsel:

Q: Mr. Handson, did you and I, since you met me, did you and I sit down and go over your testimony in the transcript of Brian's trial?

A: Yes.

Q: We did?

A: (no response)

Q: And did—did I show you a copy of the transcript and go over your testimony?

A: Huh uh.

Q: Why did you say yes?

A: I don't know.

It may be that Mr. Handson simply misunderstood the question. On the other hand, the trial court could have inferred that Mr. Handson was ready to perjure himself in order to help the defendant. Mr. Handson might have expected defendant's counsel to lead him, so he answered "yes" to the question, thinking the answer would be helpful. In actuality, counsel was expecting a "no" answer, which would have been the truth. The trial court could also

have believed Mr. Handson was lying about the contention that he was never interviewed by either counsel or her investigator. The motion court was free to disbelieve all of Handson's testimony. *See Chambers*, 745 S.W.2d at 721. Also, contrary evidence was presented by counsel, who indicated Handson was interviewed and that she informed all the witnesses the questions that would be asked. The motion court was free to determine that Handson was interviewed from the evidence presented at the hearing. Franklin has failed to show that the trial court's findings were clearly erroneous. Point II is denied.

### Denial of Continuance

In Franklin's third point on appeal he argues that the motion court erred by denying relief on his claim that the trial court's actions in sustaining Franklin's request to proceed *pro se* while refusing his request for a six week continuance denied him his right to self-representation as guaranteed by the sixth and fourteenth amendments to the United States Constitution and Article I, § 18(a) of the Missouri Constitution. The State contends that defendant's claim of trial court error is not cognizable in a Rule 29.15 proceeding and, thus, that defendant's appeal from the motion court's denial of relief upon such a claim is not properly before this court.

The State's argument is meritorious. Generally, trial court error is not cognizable in a 29.15 motion unless fundamental fairness requires it to be raised, which only occurs in exceptional circumstances. *Clemmons v. State*, 785 S.W.2d 524, 531 (Mo. banc 1990), *cert. denied*, 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990). We do not find exceptional circumstances in this case. However, even if this point would have been properly preserved for appellate review, defendant would not have prevailed. Defendant filed a "Waiver of Counsel and Request to Proceed *Pro Se*" one week prior to his trial date, which was granted by the trial court on the same day that it was filed. Defendant then made an oral request for a continuance, which was denied. Originally, this cause was set for

trial on February 26, 1990. The trial date had been reset several times for various reasons. After the denial of his request for continuance, defendant decided to waive his right to self representation and proceed to trial with appointed counsel. He now claims that he was denied his right to self-representation.

In the landmark case of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court first recognized a defendant's right to self-representation under the sixth amendment. *Faretta* not only gave the criminal defendant the right to self-representation, but it also protected him from forced representation by another. *Id.* Defendant now argues that counsel was thrust upon him against his will in violation of the principles set down in *Faretta*. We disagree. *Faretta* is distinguishable from the case at bar in that Anthony Faretta was initially permitted to waive his right to counsel, and then subsequently the trial judge reversed his ruling and reappointed the public defender to represent Faretta, effectively denying him self-representation. In the present case, Franklin waived his right to counsel and then changed his mind when his request for a continuance was denied. Franklin could have decided to proceed *pro se* long before April 2, 1990, the date when his request was made. He waited until this date to announce his decision, one week before the April 9 trial setting, a choice freely made by Franklin. When his continuance was denied he retreated back to appointed counsel by his own choice. No one deprived him of the right to proceed *pro se*. There is no showing that the trial court action deprived him of any right in this matter. Defendant was not denied his right to self-representation and there is no showing the court abused its discretion in denying defendant's continuance request. Point III is denied.

### Class X Offender

■ Franklin's fourth point on appeal is that the trial court erred in sentencing him and finding him to be a class X offender under § 558.019, RSMo 1990. The term "class X offender" is defined in § 558.019.4 as "one who has previously pleaded guilty to or has been found guilty of three felonies committed at different times." If a defendant is classified as a class X offender, the minimum sentence term the defendant must serve is eighty percent of his sentence. Section 558.019.2.

In the instant case, defendant was charged as a prior, persistent and class X offender with two counts of first-degree robbery and two counts of armed criminal action. Defendant was convicted on April 11, 1990. Prior to the date of the subject robbery, September 6, 1987, defendant had pled guilty to two felonies, a felony stealing charge and a felony robbery charge. After the instant robbery, but before the sentencing for the instant robbery, defendant pled guilty to another felony stealing charge. Defendant argues that he was erroneously classified as a class X offender in violation of his right to due process of law as guaranteed by the fifth and fourteenth amendments to the United States Constitution and Article I, § 10 of the Missouri Constitution, because the third foundational felony used by the court to classify defendant as a class X offender occurred after the date of the robbery of the Western Auto store on September 6, 1987.

■ Defendant argues that the plain and ordinary meaning of the prior, persistent and class X provisions dictates that enhancement properly befalls one who has previously offended a law of this state. The issue, as the state points out, is to determine the meaning of the term "previously." Should the term "previously" be interpreted as meaning prior to the present felonious act, prior to the conviction, prior to sentencing, or prior to some other date? Since § 558.019 is silent as to what the three felonies should be prior to, it becomes a matter of statutory construction. The Supreme Court of Missouri stated the general rule for statutory construction in *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975), as follows:

The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to

give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning.

The purpose and object of the statute must always be considered.

(citations omitted). In construing the language of the sentencing enhancement statute, the court in *State v. Jennings*, 778 S.W.2d 294, 295 (Mo.App.1989), stated:

Section 558.019 unequivocally reflects the intent of the legislature to provide for minimum prison terms to be served by various classes of repeat offenders. The repeated use throughout the statute of the phrase "previously pleaded guilty to or has been found guilty of" demonstrates the legislative concern was the status of the defendant as a repeat offender, not the manner in which that status was determined.

After reviewing the plain language of the statute and the rules of statutory construction, we conclude that the respective dates upon which the defendant pleads guilty to or is found guilty of the three prior felonies are not determinative in applying the statute for enhancing a defendant's sentence. The plain language of the statute states that a class X offender "is one who has previously pleaded guilty to or has been found guilty of three felonies committed at different times." At the time of defendant's sentencing hearing, defendant had previously pleaded guilty to three felony charges. Thus, defendant could properly be classified as a "class X offender" under § 558.019.

Review of a similar enhancement statute is also helpful in interpreting § 558.019. Section 558.016, RSMo Supp.1992, entitled "Extended terms for recidivism—definitions—persistent misdemeanor offender" also requires the defendant to have pleaded guilty to or to have been found guilty of certain misdemeanor offenses. The plain language used in § 558.016.6 states: "The pleas or findings of guilty shall be prior to the date of commission of the present offense." As applied to § 558.019, we believe if the legislature would have wanted to restrict § 558.019 to only guilty pleas or findings of guilt entered before the "com-mission of the present offense," it would have stated such language in a specific provision as it did in § 558.016. The omission of this language supports the conclusion that the trial court did not err in enhancing defendant's sentence in accordance with § 558.019 and thereby finding defendant to be a class X offender. Point IV is denied.

### Reasonable Doubt Instruction

■ Franklin's last point on appeal is that the trial court plainly erred in submitting Instruction No. 4 to the jury, defining reasonable doubt, patterned after MAI–CR3d 302.04 because Franklin was denied his right to due process, as guaranteed by the fifth and fourteenth amendment to the United States Constitution and Article I, § 10 of the Missouri Constitution. Franklin argues that the language "firmly convinced" suggests a higher degree of doubt than is constitutionally required for acquittal.

In *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), the Missouri Supreme Court approved the "firmly convinced" language found in MAI–CR3d 302.04, stating:

The "firmly convinced" language contained in the MAI definition is not new. It is substantially the same as that found in the federal instructions, and has been employed in federal and state courts alike. It is intended to assist lay jurors in their understanding of the legal phrase "beyond a reasonable doubt." The instruction achieves that purpose; in our view, "firmly convinced" is essentially synonymous with "beyond a reasonable doubt." (footnotes omitted).

*See also State v. Barnard*, 820 S.W.2d 674 (Mo.App.1991). Furthermore, MAI–CR3d 302.04 is a mandatory patterned instruction adopted by the Missouri Supreme Court, which this court lacks the authority to declare erroneous. *State v. Crawley*, 814 S.W.2d 8 (Mo.App.1991). Therefore, we hold that the trial court did not err in

submitting the reasonable doubt instruction to the jury. Point V is denied.

Judgment is affirmed.

All concur.