STATE of Missouri, Respondent,

v.

Michael TAYLOR, Appellant.

No. 77365.

Supreme Court of Missouri,
En Banc.

Aug. 20, 1996.

Rehearing Denied Sept. 17, 1996.

Elizabeth Unger Carlyle, Lee's Summit, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Becky Owenson Kilpatrick, Jill C. LaHue, Assistant Attorneys General, Jefferson City, for Respondent.

WHITE, Judge.

Michael Taylor pleaded guilty to first degree murder, section 565.020, RSMo 1986; armed criminal action, section 571.015, RSMo 1986; kidnapping, section 565.110, RSMo 1986; and forcible rape, section 566.030, RSMo 1986. He was sentenced to death for the murder. This Court has exclusive appellate jurisdiction. *Mo. Const. art. V, § 3*. We affirm.

## I.

According to Taylor's testimony at his guilty plea, Taylor's videotaped statement and other evidence adduced in the sentencing hearing,[1] Taylor and a companion, Roderick Nunley, spent the night of March 21, 1989, driving a stolen Chevrolet Monte Carlo, stealing "T-tops," smoking marijuana and drinking wine coolers. At one point during the early morning hours of March 22, they were followed by a police car, but lost the police after a high speed chase on a highway. About 7:00 a.m., they saw fifteen-year-old Ann Harrison waiting for the school bus at the end of her driveway. Nunley told Taylor, who was driving at the time, to stop so *Nunley could snatch her purse.* Taylor stopped the car, Nunley got out, pretended to need directions, grabbed her and put her in the front seat between Taylor and Nunley. Once in the car, Nunley blindfolded Ann with his sock and threatened to stab her with a screwdriver if she was not quiet. Taylor drove to Nunley's house and took Ann to the basement. By this time her hands were bound with cable wire.

Nunley removed Ann's clothes and had forcible sexual intercourse with her. Taylor then had forcible intercourse with her. They untied her, and allowed her to dress. Ann tried to persuade them to call her parents for ransom, and Nunley indicated he would take her to a telephone to call home. They put the blindfold back on her and tied her hands and led her to the trunk of the Monte Carlo. Ann resisted getting into the trunk until Nunley told her it was necessary so she would not be seen. Both men helped her into the trunk.

Nunley then returned to the house for two knives, a butcher knife and a smaller steak knife. Nunley argued with Taylor about whether to kill her. Nunley did not want Ann to be able to testify against him and emphasized he and Taylor were in this together. Nunley then attempted to slash her throat but the knife was too dull. He stabbed her through the throat and told Taylor to "stick her." Nunley continued to stab,

and Taylor stabbed Ann "two or three times, probably four." He described how "her eyes rolled up in her head, and she was sort to like trying to catch her, her breath."

Nunley and Taylor argued about who would drive the Monte Carlo, and Nunley ended up driving it following Taylor who was driving another car. Taylor picked up Nunley after he abandoned the Monte Carlo with Ann Harrison in the trunk. They returned to Nunley's house where Nunley disposed of the sock, the cable wire, and the knives.

When the school bus arrived at the Harrison home to pick up Ann, the driver honked because she was not there. Mrs. Harrison looked out of the window and noticed Ann's purse, gym clothes, books, and flute lying on the driveway. She waved for the bus to go on and began to look for her daughter. Police quickly mounted a ground and air search. Ann Harrison's body was discovered the evening of March 23rd when police found the abandoned Monte Carlo and a friend of the car's owner opened the trunk.

The State's physical evidence included hair matching Taylor's collected from Ann Harrison's body and the passenger side of the Monte Carlo, hair matching Ann's collected from Nunley's basement, sperm and semen belonging to Taylor found on Ann's clothes and body. An autopsy revealed a lacerated vagina, six stab wounds to Ann's chest, side, and back which penetrated her heart and lungs, and four stab wounds to her neck. The medical examiner testified Ann Harrison was alive when all the wounds were inflicted and could have remained conscious for ten minutes after the stabbing. She probably lived thirty minutes after the attack.

## II.

Taylor pleaded guilty to the four crimes on February 8, 1991. He testified he did not receive or expect a plea bargain and understood the State would seek the death penalty. After a sentencing hearing, the trial court found aggravating circumstances outweighed mitigating circumstances and sentenced Tay-

---

1. Evidence adduced in Taylor's sentencing hearing reveals a different factual version of the crime than does evidence adduced in Nunley's proceedings. *See State v. Nunley,* 923 S.W.2d 911 (Mo. banc 1996).

lor to death for the first degree murder, with consecutive sentences of ten years for armed criminal action, fifteen years for kidnapping, and life for aggravated rape.

Taylor filed a timely Rule 24.035 motion, which alleged the trial court was under the influence of alcohol during sentencing and the sentencing hearing and counsel was ineffective for failing to learn of the trial court's alcohol problem before advising Taylor to plead guilty. The trial court promptly recused. The presiding judge of the sixteenth circuit notified this Court all judges in the circuit were recused. This Court then appointed a special judge to conduct the Rule 24.035 proceeding. After an evidentiary hearing, the special judge denied the Rule 24.035 motion. Taylor appealed the sentence and denial of his Rule 24.035 motion. This Court issued a summary order in June 1993, stating, "Judgment vacated. Cause remanded for new penalty hearing, imposition of sentence, and entry of new judgment."

The original trial court transferred the remanded case to the presiding judge for reassignment. The presiding judge assigned the case to division nine of the sixteenth circuit. This Court ordered the cause transferred to a judge from the first circuit on March 31, 1994, but rescinded the order on April 5. Before the second sentencing hearing, the court denied Taylor's Rule 29.07 motion to withdraw the guilty plea, his motion requesting a jury for sentencing, and his motion asking for disqualification of the entire sixteenth circuit. The court received evidence on sentencing in five days of hearings during May and June 1994. The court found beyond a reasonable doubt nine aggravating circumstances were not outweighed by the mitigating circumstance. Taylor was sentenced to death for the first degree murder and consecutive terms of fifty years for armed criminal action, fifteen years for kidnapping, and life for rape.

Taylor filed a timely Rule 24.035 motion and amended motion. He also moved for disqualification of the judge. On the death of the judge who heard the most recent sentencing, the cause was transferred to another division of the sixteenth circuit. After a two-day hearing, the court overruled the Rule 24.035 motion.

### III.

Taylor attacks denial of his Rule 29.07(d) motion to withdraw his plea of guilty on several grounds. He claims the sentencing court should have sustained his motion to withdraw the guilty plea because he did not receive the benefit of his plea bargain, the court failed to personally admonish him as required by Rule 24.02, the plea was not knowingly and voluntarily made because Taylor was not informed of the elements of first degree murder and the possibility of jury sentencing, there was insufficient factual basis to support the plea, and the plea was offered to a defective information. The State, instead of addressing the merits of these claims, argues the sentencing court was limited by the remand from this Court to determine only sentencing issues and was without authority to consider a motion to withdraw a guilty plea.

 As discussed in *State v. Nunley*, 923 S.W.2d 911, 919 (Mo. banc 1996), this Court's summary order remanding the cause neither affirmed nor reversed the guilty plea, and the sentencing court could consider the Rule 29.07 motion. We review denial of a presentencing motion to withdraw a guilty plea to determine if the court's ruling is an abuse of discretion. *State v. McCollum*, 610 S.W.2d 81, 83 (Mo.App.1980). The accused is not entitled to withdraw a guilty plea as a matter of right; such relief is reserved for extraordinary circumstances, such as a showing of fraud, mistake, misapprehension, fear, persuasion, or the holding out of false hopes. *Id.*

### A. Benefit of the Plea Bargain

 Taylor argues he was denied the benefit of his plea bargain when he was sentenced by a different judge than the one before whom he originally agreed to plead guilty. He expected to be sentenced by the original judge, sober and in full possession of his faculties. Although it is preferable if the judge to whom a plea is made sentences the defendant, sentencing by a different judge if the original judge proves unavail-

able for sentencing does not create manifest injustice.[2] *Nunley*, 923 S.W.2d at 921–22. The determining factor is whether the sentencing judge has the familiarity with the prior proceedings to make an informed ruling on sentencing. *Id.* The record reveals the sentencing court after remand from this Court conducted five days of hearings, took judicial notice of all prior proceedings, and made an informed decision.

Taylor argues the consideration for his open guilty plea was not only having the original judge sentence him, but the judge would be unimpaired at sentencing. As previously discussed, Taylor was not entitled, as a matter of right, to be sentenced by the judge before whom he entered his plea. The Rule 29.07 motion was filed before sentencing on remand. Because he had not yet been sentenced, there was no impaired sentencer issue remaining. *See Nunley*, 923 S.W.2d at 919 ("By remanding for a new penalty hearing and imposition of sentence, certain allegations regarding the original trial judge were rendered moot."). In the present case, Taylor makes no allegations regarding the competence of the remand sentencing judge. Denial of Taylor's motion to withdraw his guilty plea for failure of consideration was not an abuse of discretion.

### B. Personal Admonition by the Court

■ Taylor charges the court with error for failure to allow him to withdraw his guilty plea because the court did not personally inform him of the matters required in Rule 24.02 when his guilty plea was accepted. Rule 24.02(b) provides: "[T]he court must address the defendant personally in open court, and inform him of, and determine that he understands," the specific information enumerated in the rule. A similar requirement in Rule 24.02(c) assures the court the plea is voluntary.

The plea hearing transcript reveals the court swore Taylor in, then allowed defense and prosecuting attorneys to question defendant concerning the factual basis for the plea, the voluntary nature of the plea, and his

understanding of all the rights waived by the guilty plea. Taylor specifically testified he understood, was informed of, and waived his rights. He answered more than three hundred questions encompassing all of the required advice in Rule 24.02 in detail. The court asked only a few questions, but did interrupt to correct or elaborate as needed. The court was an active participant.

Taylor contends the court's failure to use its own voice to admonish the defendant justifies withdrawal of the plea. He looks for support to *Dean v. State*, 901 S.W.2d 323 (Mo.App.1995). In *Dean*, the court held asking defendant to read a document and relying on defendant's attorney to ascertain he understood the document did not fulfill the requirements of the Rule 24.02 admonition. *Id.* at 327. In the present case, the court was more actively involved. The court saw to it the defendant was informed of all the advice required by Rule 24.02 and more. By hearing the extensive questioning, correcting misstatements, and asking a few questions, the court made a personal determination as to defendant's understanding of the waiver and the voluntariness of the plea. Although not all of the required admonition came directly from the court's lips, the court did address the defendant personally in open court, cause him to be informed of the consequences of his plea, and determine the defendant understood the consequences and voluntarily entered the plea.

■ "Among the purposes of Rule 24.02 is the intention that the court be convinced that the defendant understands the specific charges and the maximum penalty confronting him and that the defendant recognizes that by pleading guilty, he waives a number of legal rights." *Steinle v. State*, 861 S.W.2d 141, 143 (Mo.App.1993). The plea hearing record indicates the procedure used by the court accomplished this purpose. In *Dean*, after the appellate court determined a violation of Rule 24.02 had occurred, the cause was remanded for a hearing to determine whether the plea was intelligently and voluntarily made. *Dean*, 901 S.W.2d at 328. The

---

**2.** The issue in *Nunley* was decided on plain error review because the issue had not been raised until after his Rule 29.07 motion. *Nunley*, 923 S.W.2d at 920. The standard of review in the present case is abuse of discretion because Taylor raised the issue in his Rule 29.07 motion.

plea would be vacated only on such a showing. *Id.* In the present case, the record provides ample evidence Taylor's plea was knowing and voluntary. See *Beaver v. State,* 702 S.W.2d 149, 150–51 (Mo.App.1985) (during plea hearing, attorney rather than judge informed defendant of potential penalties held sufficient under Rule 24.02 because record reflected plea made voluntarily and intelligently).

### C. Improper Advice

■ Taylor claims his plea was not knowing and voluntary because he was not properly advised as to the elements of first degree murder and he was not informed of the possibility of jury sentencing. It is reversible error to accept a guilty plea not knowingly and voluntarily made. *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 1712–13, 23 L.Ed.2d 274 (1969).

■ Taylor argues his plea was not knowingly made because he was not advised he had to have the intent to kill Ann Harrison to be guilty of first degree murder. He points to the plea record where his counsel asked him, "Do you understand that to be guilty of first degree murder that you had to either have killed the victim in this case premeditatedly and deliberately or that you had to, in other words, in concert, have helped or assisted Mr. Nunley during that; do you understand that?" If this was the only evidence of the charge in the record, Taylor could argue he pleaded guilty subject to a misunderstanding of the elements of first degree murder. However, later in the plea hearing, Taylor admitted he reflected before killing the victim. Taylor's recitation of the factual basis of the plea indicated he stabbed Ann Harrison knowing their actions would kill her.

■ "When an accused admits in open court facts which constitute the offense for which he is charged, he cannot thereafter withdraw his plea on the assertion that he did not understand the nature of the charge to which he plead guilty." *Wedlow v. State,* 841 S.W.2d 214, 216 (Mo.App.1992) (citing *Western v. State,* 760 S.W.2d 174, 176 (Mo. App.1988)). The record, taken as a whole, supports the court's determination the plea

was made knowingly and voluntarily. "[A] trial court is not required to explain every element of a crime to which a person pleads guilty" so long as the defendant understands the nature of the charge. *Beaver,* 702 S.W.2d at 150. The record supports such an understanding.

■ Taylor also argues the plea was not knowingly made because he was not informed a jury could sentence him if the State consented under section 565.006.2, RSMo 1986:

No defendant who pleads guilty to a homicide offense or who is found guilty of a homicide offense after trial to a court without a jury shall be permitted a trial by jury on the issue of the punishment to be imposed, except by agreement of the state.

As is obvious from the language of the statute, jury sentencing after a guilty plea is not a right for the defendant to waive, rather a privilege for the State to grant. Taylor did not waive sentencing by a jury because he could only obtain jury sentencing if the State agreed to it. The State did not agree; therefore, there was nothing of which to inform him. A knowing and voluntary plea does not require defendant be told details irrelevant to the decision at hand. See *Wedlow,* 841 S.W.2d at 217; *Huffman v. State,* 703 S.W.2d 566, 569 (Mo.App.1986). Failure to inform Taylor of the possibility of sentencing by a jury did not render his guilty plea unknowing or involuntary.

### D. Insufficient Factual Basis for the Plea

■ Taylor asserts his equivocal testimony about culpable mental state and deliberation fails to reveal a factual basis to support his guilty plea. "The court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." Rule 24.02(e). The factual basis does not have to be established from defendant's words alone as long as the basis exists. *Smith v. State,* 663 S.W.2d 248, 249 (Mo.App. 1983).

The plea hearing record indicates initially Taylor did not want to kill Ann Harrison and argued for her release. He and Nunley argued, and Taylor did succumb to Nunley's

urging, deliberated, and stabbed Ann Harrison repeatedly. From his description of the types of wounds inflicted, he had to know their conduct would result in her death. He testified he was reluctant to participate at first, "because I never killed nobody in my life, and I ain't never watched nobody get killed." He was under no illusions the conduct was for any purpose other than murder. According to Taylor's version of the crime, he deliberated longer than Nunley did.

Defense counsel mistakenly suggested Taylor could be guilty of first degree murder if he helped Nunley kill the victim. The State's attorney asked Taylor if he reflected "before killing her, before stabbing her." Both of these questions alone are insufficient to establish the combination of culpable mental state and deliberation required for first degree murder. However, Taylor's testimony as a wh le established the culpable intent with deliberation required to support first degree murder.

### E. Defective Information

■ Taylor argues the information charging him with first degree murder citing the statutes imposing primary liability was defective because the evidence offered at the plea supported only accessory liability, but failed to cite accessory liability statutes. The information charges, "Taylor, either acting alone or purposely in concert with another, after deliberation, knowingly caused the death of Ann M. Harrison by stabbing her." Taylor asserts this failed to inform him of the actions which subjected him to criminal liability.

■ Rule 23.01.(b)4 requires an information to cite the section of the statute alleged to have been violated and the section fixing the penalty. Rule 23.11 requires prejudice of the substantial rights of the defendant before an information shall be considered invalid. Citing the incorrect statute in the information does not necessarily render the information insufficient. *State v. La-Plant,* 673 S.W.2d 782, 785 (Mo. banc 1984). The primary purpose of an information is to give defendant sufficient notice of the charge to allow adequate preparation of a defense and avoid retrial on the same charges in case

of acquittal. *State v. Hill,* 808 S.W.2d 882, 888 (Mo.App.1991). Moreover, an information may charge a defendant either as a principal or as an accessory with the same legal effect. *Id.*

As previously discussed, the plea hearing produced sufficient evidence to support a guilty plea to first degree murder. Assuming *arguendo* he was convicted as an accessory, not a principal, there was no prejudice to his substantial rights. *See id.* The charge did not deprive Taylor of the opportunity to assert any defense. It was not an abuse of discretion to overrule Taylor's motion to withdraw the guilty plea.

### IV.

■ Taylor argues his death sentence should be vacated, or in the alternative, he should be permitted to withdraw his guilty plea because he was denied a jury on resentencing. Taylor relies on section 565.035.5 which provides:

> In addition to its authority regarding correction of errors, the supreme court, with regard to review of death sentences, shall be authorized to:
>
> (1) Affirm the sentence of death; or
>
> (2) Set the sentence aside and resentence the defendant to life imprisonment without eligibility for probation, parole, or release except by act of the governor; or
>
> (3) Set the sentence aside and remand the case for retrial of the punishment hearing. A new jury shall be selected or a jury may be waived by agreement of both parties and then the punishment trial shall proceed in accordance with this chapter, with the exception that the evidence of the guilty verdict shall be admissible in the new trial together with the official transcript of any testimony and evidence properly admitted in each stage of the original trial where relevant to determine punishment.

Section 565.035.5, RSMo 1994.

■ Initially, we must note the right to a jury on the issue of punishment in a first degree murder case is created by statute. *State v. Hunter,* 840 S.W.2d 850, 863 (Mo.

banc 1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993) (citing *Spaziano v. Florida,* 468 U.S. 447, 460, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340 (1984)). "A defendant has no constitutional right to have a jury assess punishment." *Id.* Furthermore, a defendant who pleads guilty is not permitted to have a jury trial on the issue of punishment without the State's agreement. Section 565.006.2, RSMo 1994. Here, the State has not agreed to allow Taylor a jury trial on the issue of punishment. As such, Taylor's reliance on section 565.035.5(3) is misplaced.

Section 565.035.5 provides the safeguard procedure for this Court to follow for independent review of all death sentences. Section 565.035.5(3) does not provide a defendant a right to a jury trial on the imposition of sentence where such a right did not exist prior to remand. However, where a defendant previously had a right to have a jury impose sentence, section 565.035.5(3) does allow "a new jury" to be selected for purposes of imposing sentence.

Under the circumstances of this case, where defendant pleaded guilty without recommendation, this Court issued a summary order remanding the cause, this Court refrained from engaging in a proportionality review of the sentence of death, and the State does not agree to a jury trial on the imposition of sentence, we find section 565.035.5(3) does not entitle Taylor to "a new jury" for imposition of punishment because he never obtained nor possessed the right to a jury for imposition of punishment prior to this Court's remand order. Taylor's point is denied.

## V.

Defendant raises several arguments regarding the "jurisdiction" of the two trial judges who presided after this Court's summary order. Defendant first argues the judge who resentenced him lacked jurisdiction to hear the case. Defendant relies on the original trial judge's recusal and the subsequent order by the presiding judge of the sixteenth circuit which recused all sixteenth circuit judges.

■ When the alcohol allegation arose, the original trial judge recused and transferred the case to the presiding judge of the sixteenth circuit. After defendant's first appeal, this Court issued a summary order remanding the case to the sixteenth circuit. Thereafter, the case was apparently sent to the original trial judge's division. The original trial judge then entered an order transferring the case to the presiding judge for reassignment. Defendant contends after this Court's remand the original trial judge lacked jurisdiction to transfer the case to the presiding judge for reassignment. Therefore, according to defendant, the presiding judge's subsequent assignment of the case to the judge who resentenced him was void. Defendant asserts he was prejudiced and his due process rights were violated by this "violation of the rules" for assigning judges.

■ A disqualified judge lacks jurisdiction to rule on any matters which did not precede a proper objection seeking disqualification. *State ex rel. Raack v. Kohn,* 720 S.W.2d 941, 944 (Mo. banc 1986). But after disqualification, a judge does have the power to transfer the case to another judge. *State v. Van Horn,* 625 S.W.2d 874, 878 (Mo.1981). The original trial judge's action was consistent with Rule 32.10, which provides a disqualified judge shall transfer the case to the presiding judge. The original trial judge properly transferred the case to the presiding judge. Moreover, defendant fails to demonstrate a violation of his due process rights or prejudicial error. The order transferring the case to the presiding judge did not impact defendant's rights because the original trial judge had previously recused from both the criminal and post-conviction proceedings.

The two cases primarily relied on by defendant are distinguishable. Those cases involve a trial court's reversal of a previous grant of summary judgment and an order that set aside a default judgment and granted a new trial, with both orders being entered after the judge had been disqualified. *State ex rel. Johnson v. Mehan,* 731 S.W.2d 887, 888 (Mo.App.1987); *Byrd v. Brown,* 613 S.W.2d 695, 699 (Mo.App.1981). Defendant's contention regarding the original judge's re-

cusal and order transferring the case to the presiding judge is denied.

Defendant's reliance on the order by the presiding judge of the sixteenth circuit is also misplaced. In *Nunley*, this Court held the presiding judge did not have the authority to issue an order recusing all sixteenth circuit judges. *Nunley*, 923 S.W.2d at 917–18. As in *Nunley*, defendant in the present case cannot rely on an order that the presiding judge did not have the authority to issue. Accordingly, defendant's argument fails.

Defendant next argues the resentencing judge erred in denying his motion to recuse and the denial violated his rights to due process. Defendant contends an inherent conflict of interest existed, which cast doubt on the judge's impartiality.

■■■■ The United States and Missouri Constitutions guarantee a criminal defendant an impartial tribunal. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *State v. Wise*, 879 S.W.2d 494, 523 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). "Due process concerns permit any litigant to remove a biased judge." *Thomas v. State*, 808 S.W.2d 364, 367 (Mo. banc 1991). Rule 2, Canon 3(D)(1) of the Code of Judicial Conduct requires a judge to recuse in a proceeding where the judge's impartiality might reasonably be questioned. The test under the canon is whether a reasonable person would have a factual basis to doubt the judge's impartiality. *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 698 (Mo.App.1990).

■■■■ Defendant asserts if the resentencing judge imposed a different sentence than the original trial judge then this would support the allegation the original judge was under the influence of alcohol during sentencing. Defendant also claims if the resentencing judge imposed the death penalty this would appear to be giving the original judge a vote of confidence. According to defendant, this demonstrates an inherent conflict of interest existed for the resentencing judge or for any other sixteenth circuit judge.

This Court rejected a similar argument in *Nunley*. In that case, defendant, Nunley, argued it was unrealistic to ask the resentencing judge from the sixteenth circuit to set aside his feelings for the original trial judge and to come to an "independent determination" regarding his sentencing. *Nunley*, 923 S.W.2d at 918. Nunley asserted the resentencing judge could not be impartial because he and the original trial judge were from the same circuit. *Id.* This Court noted Nunley did not contend and nothing in the record reflected any special relationship between the resentencing judge and the original trial judge. *Id.* This Court held an allegation the original trial judge had been drinking was insufficient, by itself, to compel recusal of the resentencing judge. *Id.*

As in *Nunley*, defendant does not suggest and the record does not reflect any special relationship between the resentencing judge and the original trial judge. The analysis in *Nunley* applies in this case. In many instances, judges reconsider rulings by other judges. The fact an alcohol allegation necessitated the original trial judge's recusal does not compel recusal for all other judges within the sixteenth circuit. *Id.* Defendant's allegation of a conflict of interest for any sixteenth circuit judge resentencing defendant is too attenuated to require recusal.

■■■ Defendant also asserts strong public opinion about the case required recusal. Defendant relies on a letter from a person asking the resentencing judge to impose the death penalty. The judge also received a letter from another person thanking the judge for imposing the death penalty. It is not unusual for a judge to receive letters from the public or for there to be publicity for crimes such as in this case. *State v. Schneider*, 736 S.W.2d 392, 403–04 (Mo. banc 1987) (discussing denial of motion for change of venue), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988); *State v. Woollen*, 643 S.W.2d 270, 272 (Mo.App.1982). Under the facts presented here, this is simply an insufficient basis for recusal. The resentencing judge did not err in denying defendant's motion to recuse.

Defendant also argues the judge hearing his Rule 24.035 motion erred in denying his motion to recuse. In the alternative, defen-

dant argues the post-conviction judge erred by not having a different judge hear the recusal motion.

■ Defendant filed a motion to disqualify the resentencing judge from hearing the Rule 24.035 motion. The resentencing judge did not rule on this motion prior to his death. Defendant subsequently filed supplemental suggestions for the motion to disqualify. Defendant contends on appeal the factors requiring the post-conviction judge to recuse are identical to those requiring the resentencing judge and all sixteenth circuit judges to recuse. As previously discussed, the resentencing judge was not required to recuse. The reasoning for the resentencing judge applies for the post-conviction judge. Accordingly, the post-conviction judge did not err in denying defendant's motion to recuse. In addition, because the motion to disqualify was substantively insufficient, the judge did not err by not having a different judge hear the recusal motion. *See State ex rel. Wesolich*, 794 S.W.2d at 699. Defendant's points regarding jurisdiction of the two judges are denied.

## VI.

### A. Decision to Seek Death Penalty

Taylor urges his sentence be vacated because the decision to seek the death penalty was the product of racial discrimination by the prosecutor's office in violation of the Equal Protection Clause. He raised this issue in his Rule 29.07 motion and in his Rule 24.035 motion. In support, he points to statistical evidence concerning Jackson County cases charging first degree murder in the three years before Taylor's sentencing, allegations an assistant prosecutor involved in his original plea was biased, allegations of discrimination by Jackson County prosecutors in jury selection, allegations of racial slurs and employment discrimination in the prosecutor's office, the State's unusual refusal to offer life without parole in exchange for a guilty plea, and a study of racial disparity in Missouri capital punishment cases covering 1977 to 1991.

■ A prosecutor's broad discretion does not extend to decisions deliberately based on unjustifiable standards such as race or some other entirely arbitrary factor. *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). To show an equal protection violation, Taylor must prove both the prosecutor's decision had a discriminatory effect on him and it was motivated by discriminatory purpose. *Id.* "Because discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused." *McCleskey v. Kemp*, 481 U.S. 279, 297, 107 S.Ct. 1756, 1770, 95 L.Ed.2d 262 (1987).

■ Only one of Taylor's allegations pertains to decisions made in his case. The Jackson County and Missouri studies, assuming *arguendo* they are valid and reliable, apply to discriminatory effect of decisions, but do not show purposeful discrimination or any effect on his case, specifically. "To prevail under the Equal Protection Clause, [defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose." *Id.* at 292, 107 S.Ct. at 1767 (emphasis in original). The other allegations of discrimination within the prosecutor's office were irrelevant because they did not involve decision makers, were remote in time, and did not show discriminatory purpose in his case.

■ The allegation of discrimination specific to this case is the prosecutor's refusal to exchange a recommendation of life without parole for Taylor's guilty plea to first degree murder. Taylor charges the race of defendant and victim must be the reason for the prosecutor's decision. More likely, the unique circumstances of Ann Harrison's murder and the strength of the State's case motivated the prosecutor's decision. "Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious." *Id.* at 313, 107 S.Ct. at 1778. Taylor failed to produce exceptionally clear proof of an equal protection violation in the prosecutor's decision to seek the death penalty.

### B. Sentencing Scheme

■ Defendant argues the statutory scheme for the death penalty under section

565.032 violates his right to due process. Defendant contends the sentencer has discretion to impose the death penalty in any first degree murder case because one of the statutory aggravating circumstances provided in section 565.032 "can apply in *any* case of first degree murder."

An aggravating circumstance "may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa v. California*, 512 U.S. 967, ——, 114 S.Ct. 2630, 2635, 129 L.Ed.2d 750 (1994). "If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm." *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993). Defendant does not challenge a specific aggravating circumstance under section 565.032 but rather suggests one of the seventeen statutory aggravating circumstances can be found in every first degree murder case. Review of the statutory aggravating circumstances and the elements for first degree murder under section 565.020 simply does not reveal one of the statutory aggravating circumstances could be found in each case of first degree murder. Defendant's claim is denied.

### C. Independent Review

Pursuant to section 565.035.5, RSMo 1994, this Court must determine: (1) whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether the statutory aggravating circumstances and any other circumstances found by the trial court were supported by the evidence; and (3) whether the sentence is excessive or disproportionate to similar cases.

There is no evidence defendant's sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

The trial court found the following statutory aggravating circumstances: the murder was outrageously and wantonly vile, horrible, and inhuman; the murder was committed by a person who escaped from a place of lawful confinement; the murder was committed while the defendant was engaged in the perpetration of kidnapping, rape, and attempted armed robbery; and the victim was killed as a result of her status as a witness.[3] Section 565.032.2(7)(9)(11)(12), RSMo 1986. The trial court also found defendant had seven prior felony convictions, defendant escaped from the custody of the Jackson County Department of Corrections and after being apprehended threatened a corrections officer, and defendant inflicted "inconceivable physical torture and emotional suffering" upon the victim. The evidence supported the trial court's findings on all of the aggravating circumstances.

This Court has compared similar cases where the murder was outrageously or wantonly vile, horrible or inhuman. *State v. Nunley*, 923 S.W.2d 911; *State v. Richardson*, 923 S.W.2d 301, (Mo. banc 1996); *State v. Powell*, 798 S.W.2d 709 (Mo. banc 1990); *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991), *State v. Oxford*, 791 S.W.2d 396 (Mo. banc 1990), *cert. denied*, 498 U.S. 1055, 111 S.Ct. 769, 112 L.Ed.2d 789 (1991); *State v. McMillin*, 783 S.W.2d 82 (Mo. banc), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990); *State v. Kilgore*, 771 S.W.2d 57 (Mo. banc 1989), *cert. denied*, 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989); *State v. Lingar*, 726 S.W.2d 728 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987); *State v. Mercer*, 618 S.W.2d 1 (Mo. banc), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981). In other cases, the death penalty was imposed where the defendant committed murder in conjunction with other crimes involving force. *Nunley*, 923 S.W.2d 911; *State v. Brown*, 902 S.W.2d 278 (Mo. banc), *cert. denied*, —— U.S. ——, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995); *State v. Gray*, 887 S.W.2d 369 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *State v. Ramsey*, 864

---

**3.** Prior to the crimes being committed, defendant had failed to return to a halfway house while on conditional release. A halfway house is considered a place of confinement for purposes of section 565.035.2(9). *State v. Walls*, 744 S.W.2d 791, 799 (Mo. banc), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).

S.W.2d 320 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Six,* 805 S.W.2d 159 (Mo. banc), *cert. denied,* 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991); *State v. Petary,* 781 S.W.2d 534 (Mo. banc 1989), *vacated and remanded,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931, *reaffirmed,* 790 S.W.2d 243 (Mo. banc), *cert. denied,* 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990); *State v. Griffin,* 756 S.W.2d 475 (Mo. banc 1988), *cert. denied,* 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). This Court has also compared similar cases where the victims were killed because of their potential status as witnesses. *Nunley,* 923 S.W.2d 911; *State v. Parker,* 886 S.W.2d 908 (Mo. banc 1994); *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Shurn,* 866 S.W.2d 447 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994); *State v. Davis,* 814 S.W.2d 593 (Mo. banc 1991), *cert. denied,* 502 U.S. 1047, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992); *Six,* 805 S.W.2d 159. Considering the crime, the evidence, and defendant, the penalty imposed is not excessive or disproportionate to the penalties imposed in similar cases.

Defendant cites several cases where the death penalty was not imposed and claims these cases are factually similar to the present case. The cases relied on by defendant and others have been examined. None have the aggravating circumstances and the absence of significant mitigating circumstances that are presented in this case. Defendant's claim is denied.

### D. Proportionality Review Scheme

Defendant argues this Court's proportionality review under section 565.035.3(3) violates his due process rights. Defendant contends the statute and this Court's cases provide inadequate guidance to a defendant who wants to argue imposition of the death penalty is disproportionate. Defendant suggests this Court should adopt a type of statistical analysis when conducting proportionality review.

■ Proportionality review is not constitutionally required but rather is required by section 565.035. *State v. Weaver,* 912 S.W.2d 499, 522 (Mo. banc 1995). We have previously rejected defendant's argument the method used by this Court to conduct proportionality review violates a defendant's due process rights. *Id.; State v. Whitfield,* 837 S.W.2d 503, 514–15 (Mo. banc 1992). This Court has also previously rejected defendant's suggested adoption of a type of statistical analysis for proportionality review. *Id.; State v. Ramsey,* 864 S.W.2d 320, 327–28 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994). Defendant's claim fails.

### VII.

Adequate mitigation investigation is the linchpin of Taylor's final three points relied on. Taylor argues the post-conviction relief court's finding that mitigation investigation was adequate is clearly erroneous. Alternatively, he argues those findings are insufficient. Because the investigation was inadequate, Taylor's reasoning goes, counsel for the first and second sentencing hearings provided ineffective assistance of counsel and the court clearly erred finding otherwise. Again, because of inadequate investigation, Taylor argues the court abused its discretion denying his motion for continuance to pursue further investigation.

■ Taylor argues the trial court's findings are insufficient. We disagree. Taylor alleges the trial court failed to issue findings of fact and conclusions of law on all issues presented, as required by Rule 24.035(i). Taylor claims "it is impossible to tell whether: 1) Judge Messina disbelieved all of the new evidence about appellant's family history and mental state, and therefore thought that their testimony would not have made a difference; 2) Judge Messina did not believe that the new evidence could have been developed by earlier investigation; or 3) Judge Messina believed the witnesses, but did not believe Judge Coburn would have imposed a life sentence even if he had all of the new evidence."

■ "There is no precise formula to which findings of fact and conclusions of law must conform." *Conway v. State,* 883

S.W.2d 517, 517 (Mo.App.1994) (citing *Short v. State*, 771 S.W.2d 859, 865 (Mo.App.1989)). "Generalized findings are sufficient if they enable the appellate court to meaningfully review the movant's contentions." *Id.* In over thirty-six pages of findings and conclusions the trial court sufficiently addressed Taylor's concerns and claims. Taylor presented thirteen witnesses, and the trial judge summarized and evaluated the testimony of each witness individually. We find the trial court's findings of fact to be extensive, specific and sufficient to allow proper appellate review.

■ Taylor presented evidence to the post-conviction relief court that several of his attorneys believed their mitigation investigation was inadequate. A mitigation expert testified of the need for more investigation. On cross-examination, the expert admitted he had not read the entire transcript and record and did not know what evidence had been before the sentencing court. A mitigation investigator testified she had not yet contacted all of the potential witnesses she wished to interview. A medical expert testified a mental health issue required further development. The post-conviction relief court heard from two witnesses who had not previously testified about Taylor's childhood. Taylor argues childhood trauma and possible mental disorder were undeveloped issues affecting mitigation.

The court found,

The general picture that emerges from the post conviction hearing testimony of these thirteen witnesses is basically the same picture that the Court had before it at the second penalty hearing.

The witnesses who have stated that more investigation was needed either for the second penalty hearing or for the post conviction hearing, have been unable to establish through credible and specific testimony what benefit there would have been to Movant had such time been granted....

The [second penalty hearing] record is replete with mitigation evidence adduced by Movant's counsel. Counsel presented twelve witnesses, and numerous exhibits. Any additional witnesses regarding mitigation evidence would have been cumulative,

and Movant has failed to show how he was prejudiced by the alleged failure of counsel to contact additional witnesses....

Movant presented numerous witnesses and exhibits in support of his defense of mental illness and accompanying personality disorders at his sentencing hearing. Further, no credible evidence was presented at the post conviction hearing supporting Movant's position in this regard. Movant has had the benefit of several mental examinations, and the results of those examinations were before Judge Coburn.

■ We review denial of post-conviction motions to determine whether the court's findings and conclusions are clearly erroneous, in other words, after a review of the whole record, are we left with the definite and firm impression a mistake has been made? *Moore v. State*, 827 S.W.2d 213, 215 (Mo. banc 1992). The court did not find the evidence supporting a need for further investigation to be credible. We respect the motion court's superior ability to determine matters of witness credibility. *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc), *cert. denied*, — U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). The court determined further mitigation witnesses would have produced merely cumulative evidence. Upon examination of the record, we do not find these conclusions clearly erroneous.

■ Taylor claims he was denied effective assistance of counsel because his attorneys failed to further investigate mitigating evidence. Ineffective assistance of counsel exists when counsel fails to use the "customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and the failure to exercise such diligence is prejudicial." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). We presume counsel to be competent, requiring proof to the contrary by a preponderance of the evidence. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Movant must satisfy both the performance and the prejudice prong to prevail. *Id.* If he fails to show prejudice,

the court need not evaluate performance. *Id.*

Taylor asserts, "[h]aving found that appellant suffered prejudice from the failure to present mitigating evidence, this court must also find that the failure to investigate mitigating evidence was ineffective assistance of counsel." Far from finding appellant suffered prejudice, we found the motion court did not clearly err deciding further investigation would produce merely cumulative evidence and testimony purporting to show the need for more investigation was not credible. The two witnesses who testified for the first time at the post-conviction relief hearing presented evidence of Taylor's childhood from their perspectives, but did not bring forth any significant fact or incident that had not been before the second sentencing court from other witnesses. The mental health expert refused to make a firm diagnosis, but suggested traumatic stress disorder or dissociative disorder possibilities could exist. Previous examinations by psychologists and psychiatrists had resulted in findings of mental competence and failed to indicate these newly suggested disorders. Counsel cannot be faulted for failing to shop for a psychiatrist who would testify more favorably. *State v. Mease,* 842 S.W.2d 98, 114 (Mo. banc 1992), *cert. denied,* 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993).

Taylor failed to establish but for counsel's investigation of mitigation there is a reasonable probability he would not have been sentenced to death. The motion court was not clearly erroneous to find Taylor did not receive ineffective assistance of counsel.

In his final point, defendant argues the post conviction court erred by denying his motion for a continuance. The decision to grant or deny a continuance is a matter within the sound discretion of the trial court. *State v. Chambers,* 891 S.W.2d 93, 100 (Mo. banc 1994); *State v. Ervin,* 835 S.W.2d 905, 929 (Mo. banc 1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

After defendant filed his pro se Rule 24.035 motion, counsel was appointed on October 27, 1994. Defendant filed an amended 24.035 motion and an evidentiary hearing was scheduled for March 21, 1995. Defendant filed a motion for continuance. The court granted the motion and scheduled the evidentiary hearing for April 24, 1995. Prior to this date, defendant filed a second motion for continuance. The court also granted this motion and scheduled the evidentiary hearing for May 18, 1995. After completing his presentation of evidence on May 19, 1995, defendant argued testimony from a mitigation expert and psychologist indicated additional time was needed for investigation and interviewing witnesses. Defendant asserted the information was relevant to his claim of counsel's inadequate investigation for the penalty phase. The court treated defendant's argument as a motion for continuance and denied the motion.

The post conviction court granted defendant almost two additional months from the original scheduled hearing date. Counsel had represented defendant for more than six months prior to the hearing. *See State v. Wise,* 879 S.W.2d 494, 523 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995). In addition, the post conviction court addressed the testimony of defendant's psychologist and mitigation expert in its findings and conclusions for defendant's Rule 24.035 motion. The court found the witnesses who stated additional time was needed failed to establish through "credible and specific testimony" how the defendant would have benefitted from the additional time. The court also found any additional witnesses testifying as to mitigation would have been cumulative and defendant failed to demonstrate prejudice by the alleged failure of counsel to contact additional witnesses. On this record, the court did not abuse its discretion by denying defendant a third continuance.

## VIII.

The judgments are affirmed.

BENTON, PRICE, LIMBAUGH, ROBERTSON and COVINGTON, JJ., concur.

HOLSTEIN, C.J., dissents in separate filed opinion.

HOLSTEIN, Chief Justice, dissenting.

For the reasons expressed at length in *State v. Nunley,* 923 S.W.2d 911 (Mo. banc 1996), I respectfully dissent.