**STATE of Missouri, Appellant,**

v.

**Dennis STOUT, Respondent.**

No. 71206.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 4, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 8, 1998.

Joseph A. Rathert, Fenton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel G. Cierpiot, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Presiding Judge.

Defendant, Dennis Stout, appeals from the trial court's judgment entered on his conviction of felonious animal abuse. Section 578.012.2(2) RSMo (1994). Defendant argues on appeal that the State failed to produce sufficient evidence that he mutilated the dog in question. We affirm.

Viewed in the light most favorable to the verdict, the evidence adduced at trial established the following facts. Defendant's girlfriend, Peggy Rosenblum, adopted a dog named "Cody" from the Humane Society in June, 1995. On December 3, 1995, Cody ran away from Rosenblum's residence. Defendant and Rosenblum searched for Cody and eventually found him in St. Ann Park, about one mile away from Rosenblum's residence. Defendant, in an attempt to "teach the dog a lesson", attached Cody's leash to the bumper of his pick up truck and dragged Cody behind the truck at 20–25 miles per hour.

Terry Roney, a person who lives next to the park, saw defendant pulling Cody behind his truck and called the St. Ann police. Officer Lankford responded to the call and drove towards defendant's truck. As Officer Lankford first noticed defendant's truck, he observed the truck accelerating around a corner from a stop sign, thereby causing Cody to stumble, fall, and jump up again in an effort to keep up with the truck.

Officer Lankford eventually caught up with defendant and pulled him over. As he was approaching defendant's truck, he noticed that Cody was choking and observed a sub-

stantial amount of blood coming from all four of Cody's paws. Officer Lankford then arrested defendant and took Cody to a veterinarian for treatment. The veterinarian, Dr. Wentz, noted that the tough skin covering Cody's front paws and the corporal pads (an area of tough skin just above the paws) had been completely scraped off and that only exposed nerve endings remained on them. Dr. Wentz also observed that there were large legions on the skin covering Cody's back paws with some nerve ending exposed. Cody recovered after several weeks of treatment and was eventually adopted from the Humane Society.

On December 5, 1995, Stout was charged with animal abuse, a class D felony. After a two day trial, the jury returned a guilty verdict on June 19, 1996. The trial court entered judgment against defendant on the jury's verdict and sentenced him to six months in jail and fined him $3,000. Defendant filed a motion for a new trial which the trial court denied on August 23, 1996. This appeal followed.

A person is guilty of animal abuse, a class A misdemeanor, when he "purposefully or intentionally causes injury or suffering to an animal." Sections 578.012.1(2); 578.012.2. However, the statute elevates animal abuse to a class D felony if the suffering involved in the abuse "is the result of torture and mutilation." [1] Section 578.012.2(2). In his only point on appeal, defendant alleges that the trial court erred in submitting the class D felony instruction to the jury since the State failed to produce sufficient evidence that he mutilated Cody. We disagree.

When reviewing an allegation that the State failed to produce sufficient evidence to support a conviction, we will affirm the jury's verdict if there is sufficient evidence from which a reasonable juror might have found defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993); *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Also, we will review the record in the light most

---

1. The Legislature amended the animal abuse statute in 1996 so that a defendant is guilty of a class D felony if the suffering is the result of torture or mutilation or both. Section 578.012.2(2) RSMo Cum. Sup.1996.

favorable to the State and accept as true all inferences of defendant's guilt. *Id.*

■ Our task in the present case is to construe the term "mutilation" as used by the legislature in section 578.012.2(2). When construing a statute, a court's responsibility is to ascertain and effectuate the intent of the legislature. *State ex. rel. Metro. St. Louis Sewer Dist. v. Sanders*, 807 S.W.2d 87, 88 (Mo. banc.1991). When effectuating the intent of the legislature, a court should look first to the language of the statute and the plain and ordinary meaning of the words the legislature utilized. *Id.*

■ In the instant case, the legislature did not provide a definition of "mutilation" in the animal abuse statute. In such a case, two rules of statutory construction are particularly helpful to our analysis. First, we will glean the plain and ordinary meaning of the undefined term in question from its dictionary definition. *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993). Second, we presume that the legislature had knowledge of any prior judicial construction of the term in question when it enacted the statute. *Citizens Elec. Corp. v. Director of Dep't of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989).

At the time the legislature enacted the animal abuse statute in 1983, Missouri Courts had defined mutilation as to "cut off or permanently destroy a limb or essential part of" or "to cut up or alter radically so as to make imperfect." *See Elliott v. James Patrick Hauling, Inc.*, 490 S.W.2d 284, 287 (Mo.App.1973). The Webster's dictionary in use in 1983 had defined mutilation as (1) to cut off or permanently destroy a limb or essential part or (2) cripple or (3) to cut up or alter radically so as to make imperfect. (Emphasis Added). Webster's Ninth New Collegiate Dictionary (1983). Webster's dictionary also stated that mutilation implies the cutting off or removal of an essential part of a person or thing, thereby impairing its completeness, beauty, or function.

■ Here, defendant and the dissent argue that the term "mutilation" as used in the animal abuse statute connotes a permanent injury to a limb or essential part of the body.

However, nothing in either Webster's definition or the judicial construction of the term "mutilation" requires the injury to be permanent. Rather, under Webster's definition and the prior judicial construction of the term, "mutilation" as used in section 578.012.2(2), encompasses any severe injury that results in the cutting off or removal of an essential part of a person or thing and impairs its completeness, beauty, or function.

■ In the instant case Officer Lankford testified that Cody was bleeding from all four of his paws when he first observed the dog. Also, Dr. Wentz, the veterinarian who treated Cody, testified at trial that the tough skin covering Cody's front paws and corporal pads had been completely worn away and only the raw nerve endings remained on them. Dr. Wentz further testified that the tough skin covering Cody's back paws had large legions on them and some nerve endings were exposed. Furthermore, Dr. Wentz stated that she bandaged and applied antibiotics to Cody's paws over a several week period to facilitate their healing. Additionally, Dr. Wentz testified that Cody was in pain when Officer Lankford brought him in to her and that she had to administer a sedative to Cody before treating his wounds.

Viewing this record in the light most favorable to the State, we find that the State produced sufficient evidence that defendant's actions resulted in the removal of the tough skin on Cody's paws and corporal pads and exposure of nerve endings, thereby impairing the paws' completeness and function over a several week period. Thus, the State produced sufficient evidence from which a reasonable juror may have found beyond a reasonable doubt that Cody's injuries and suffering were the result of torture and mutilation notwithstanding the fact that Cody recovered from his injuries after several weeks of treatment. The trial court, therefore, did not err in submitting the class D felony instruction to the jury. Defendant's point is denied.

The judgment of the trial court is affirmed.

CRANDALL, J., concurs in opinion of AHRENS, P.J.

KAROHL, J., dissents with an opinion.

KAROHL, Judge, dissents.

I respectfully dissent. Defendant timely moved for judgment of acquittal and objected to the verdict directing instruction which required a finding that defendant tortured and mutilated the dog because the state failed to offer evidence to support a finding of mutilation as that term was used in the 1983 statute. The trial court overruled the motion for acquittal and submitted the instruction. It erroneously relied upon a definition of mutilation in a dictionary that was not published until years after the statute in question was enacted. *See, Asbury v. Lombardi,* 846 S.W.2d 196, 201 (Mo. banc 1993). The state has relied on two dictionary definitions but they were also published long after the statute in question was enacted. The majority opinion correctly refers to a 1983 Webster's Dictionary, which "implies the cutting off or removal of an essential part ... thereby impairing its completeness, beauty or function." However, the definition includes reference to "great injury" or "serious bodily injury"; "maim implies the loss or injury of a bodily member through violence ... mutilate implies the cutting off or removal of an essential part of a person or thing, thereby impairing its completeness, beauty, or function." The state's evidence was Cody recovered after several weeks of treatment, thus, no mutilation.

The Missouri Legislature in 1996 amended Section 578.012 RSMo 1994 so that an animal abuser may now be convicted of a felony offense by torturing, or mutilating, or both. The legislature has closed the avenue of escape. Defendant did torture. What he did to Cody would quite properly now be a felony. However, if the majority opinion correctly analyzes the legislative intent of the 1983 statute, then there was no need for the amendment.

There remains a question of result. Does the evidence support a conviction of misdemeanor abuse? Yes. Is a retrial the solution? No. "Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements." *State v. Dooley,* 919 S.W.2d 539, 542 (Mo.App.E.D.1995). See *State v. O'Brien,* 857 S.W.2d 212 (Mo. banc 1993)[dicta]; *State v. Nguyen,* 880 S.W.2d 627 (Mo.App.E.D.1994). All elements of the class A misdemeanor of animal abuse were established by the evidence and were necessarily found by the jury in arriving at its verdict.

We should hold the evidence failed to support submission of felony abuse, as defined before a 1996 amendment, but affirm conviction for the class A misdemeanor of animal abuse. We should remand only for re-sentencing. We note: (1) the entire jail sentence has been served; (2) a fine may not exceed the amount authorized by law, for, a misdemeanor, an amount which will, therefore, be less than the $3,000. *State v. Dooley,* 919 S.W.2d at 542–43.