STATE of Missouri, Appellant,

v.

Matthew ROBERTS, Respondent.

No. WD 56456.

Missouri Court of Appeals,
Western District.

Oct. 19, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 23, 1999.

Application for Transfer Denied
Jan. 25, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for appellant.

Laura O'Sullivan, Asst. Public Defender, Kansas City, for respondent.

PAUL M. SPINDEN, Judge.

The state appeals the circuit court's judgment convicting Matthew Roberts of misdemeanor animal abuse. The circuit court set aside the jury's guilty verdict on the charge of felony animal abuse and entered judgment against Roberts for misdemeanor animal abuse. The state argues that the evidence was sufficient to support the jury's verdict. We agree and reverse the circuit court's judgment and remand with instructions that the circuit court enter judgment convicting Roberts of felony animal abuse.

The felony animal abuse statute in effect at the time of Roberts' actions required that the state show that an animal's suffering was the result of torture and mutilation.[1] Section 578.012, RSMo 1994. Purposefully injuring an animal is a misdemeanor. Purposefully torturing and mutilating an animal was a felony under § 578.012.2 then in effect. In its written judgment, the circuit court said, "The evidence presented by the [s]tate, while sufficient to establish torture of the animal, provided no basis upon which the jury could find mutilation of the animal." In discussing its judgment, the circuit court concluded that "mutilation" required "some kind of an external injury, that there be some scarring or that there be

___

**1.** A 1996 amendment changed the statutory language to allow the felony charge when the evidence establishes torture or mutilation.

some kind of destruction to a limb or other part of the body." The state asserts that the evidence proved that Roberts mutilated his dog, Hercules.

On February 18, 1996, David Hooper, who lived next to Roberts in a duplex, heard a sound of something being hit and a dog's yelping in Roberts' residence. The sounds continued for more than an hour. Hooper testified that when he looked into Roberts' front window, he saw that Roberts seemed to be "fighting with something," while moving in a twisting motion facing down on the couch, with his sweatpants partially down. Soon afterward, Roberts came to Hooper's door saying that he thought that he had killed his dog. He asked for Hooper's help. Hooper went out to the front yard and saw the dog lying motionless. Hooper went to a nearby convenience store to call for assistance from animal control.

Grandview police arrived about two hours later and arrested Roberts for animal abuse. Roberts told Detective Tom Engert that he had stepped on his dog accidentally, and it ran away from him. When he called for it to come back, the dog did not cooperate, which angered him. He said that he beat the dog 20–25 times with an oak stick, and then hugged it because he felt sorry for his actions. Roberts said, "I guess I squeezed him too hard because he died." In the residence, the police found a garden hose with a moist reddish-brown substance on it, a pair of boxer shorts with stains consistent with the substance on the hose, and similar splatters in the hallway, bathroom and kitchen. Roberts told Engert that he sodomized the dog with the hose, but at trial, Roberts denied sodomizing the dog.

David Pinson, a veterinarian, performed a postmortem examination of the dog on February 19, 1996. He determined that "trauma, some hemorrhage and pain and poor heart function" from heartworms triggered the dog's death. Pinson found that the dog had five fractured ribs and that these injuries were consistent with blunt trauma, such as a beating. The broken ends of ribs tore into the surrounding muscles and severed arteries, causing blood to collect in the dog's chest cavity. The doctor testified that he found several large bruises, not visible externally, in the tissue under the skin of the abdomen. He also noticed subcutaneous bruises from blunt trauma above the dog's right hip. The doctor did not detect any injuries to the dog's anal area. Pinson testified that the trauma radically altered the ribs and made them imperfect. He declined to offer an opinion concerning whether the dog was mutilated without being given a definition of "mutilation."

■ In deciding that the state had not established that the dog was mutilated, the circuit court relied on *State v. Stout*, 958 S.W.2d 32 (Mo.App.1997), the only other Missouri case construing § 578.012.2's use of the term "mutilation." We determine the legislature's intent from the plain and ordinary meaning of a statute's words. *State v. Wahby*, 775 S.W.2d 147, 151 (Mo. banc 1989). The General Assembly did not define "mutilation," so it intended the courts to interpret the statute by giving the term its plain and ordinary meaning. *State v. Carson*, 941 S.W.2d 518, 521 (Mo. banc 1997).

The *Stout* court noted a prior judicial construction of "mutilation" in a worker's compensation statute had incorporated the definition of the term published in Webster's Third New International Dictionary. 958 S.W.2d at 34 (citing *Elliott v. James Patrick Hauling, Inc.*, 490 S.W.2d 284, 287 (Mo.App.1973)). The *Elliott* court decided that "mutilation" meant "to cut off or permanently destroy a limb or essential part of" or "to cut up or alter radically so as to make imperfect." 490 S.W.2d at 287. The *Stout* court held that "mutilation" in the animal abuse statute did not imply that the mutilation must be permanent, and it decided that a dog's wounds resulting from being dragged behind a truck at 20–25 miles per hour constituted mutilation even though the wounds had healed by the time

of trial. 958 S.W.2d at 34. *Stout* did not consider whether § 578.012.2 required a mutilation must be externally visible.

■ We concur with the definition of "mutilation" adopted by the *Stout* court, but we do not agree with the circuit court that the definition excludes internal injuries. To beat a dog until its ribs are so broken that they not only do not function to protect chest organs but cut and destroy surrounding muscles and arteries constituted mutilation. That Roberts beat the dog for at least an hour constituted torture. The jury had a sound basis for finding Roberts guilty of felony animal abuse.

Roberts argues that including internal injury in the definition of "mutilation" would subject almost every homicide defendant to the death penalty because mutilation of the victim is an example of depravity of mind, which is an aggravating circumstance that allows juries to impose the strictest sentence. We do not address use of the term in death penalty cases. We focus only on the General Assembly's intended use of the term in § 578.012.2. The courts have considered the term in the context of death penalty cases. *See State v. Taylor*, 929 S.W.2d 209 (Mo. banc 1996), *cert. denied*, 519 U.S. 1152, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997); *State v. Reuscher*, 827 S.W.2d 710 (Mo. banc), *cert. denied*, 506 U.S. 837, 113 S.Ct. 114, 121 L.Ed.2d 71 (1992); *State v. Schneider*, 736 S.W.2d 392 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988); *State v. Jones*, 705 S.W.2d 19 (Mo. banc), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986).

The state properly showed that Roberts purposely or intentionally caused injury to an animal and that the abuse was a result of torture and mutilation. The circuit court erred. The jury's verdict was supported by substantial and competent evidence. We, therefore, reverse the circuit court's judgment and remand with instructions that it enter judgment convicting Roberts of felony animal abuse.

PATRICIA BRECKENRIDGE, Presiding Judge, and JAMES M. SMART, Judge, concur.