**James Edward MOORE, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 74002.

Supreme Court of Missouri, En Banc.

March 24, 1992.

Dave Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Defendant appeals from the denial of his 27.26 motion seeking relief from his convictions of rape, sodomy and first degree burglary. We reverse and remand.

The charges arose at the instance of M.T., defendant's neighbor in an adjoining duplex unit, who reported that as she lay in bed on the night of September 27–28, 1985, a man wearing gloves and a ski mask raped and sodomized her. The victim testified the assailant identified himself as Darryl, the father of her children, but she knew the voice was not his. While the victim first stated she did not recognize her assailant's voice, she later identified the voice as that of appellant. M.T. named appellant as the attacker, though during the assault she

was able to momentarily raise the mask no further than his eyebrows and then blacked out. Samples were taken of a semen stain on the victim's bed sheet, as well as vaginal and rectal swabs from the victim, which tested positive for the presence of semen. Defendant's conviction on these charges was affirmed on direct appeal. *State v. Moore,* 731 S.W.2d 351 (Mo.App.1987).

In his motion for postconviction relief, defendant questioned his counsel's failure to investigate his blood type for comparison with specimens obtained from the victim's apartment. Defendant testified that he repeatedly asked counsel that tests be conducted to establish his innocence, but no testing procedure was performed until 1988–1989, after the filing of defendant's 27.26 motion. The serological evidence produced in support of the motion established that defendant has Type O blood and is a nonsecretor, meaning that he does not secrete antigens reflecting his blood type in his body fluids, including semen. An antigen is a protein or carbohydrate substance, such as a toxin or enzyme, which stimulates the production of antibodies. The victim's blood type was identified as Type O, secretor, meaning that her body fluids could contain H antigens. The semen stain on the bed sheet contained A and H antigens, which could not have been produced by a nonsecretor, such as defendant, nor could the victim have produced the A antigen; the evidence therefore firmly established that someone other than defendant produced the semen stain. However, samples taken from M.T.'s vagina and rectum also evidenced the presence of spermatozoa. Patricia Dougherty, a forensic scientist from the St. Louis County Police Department, testified she was unable to identify any antigens in these swabs, which could have been consistent with a nonsecretor male such as appellant, but she further acknowledged that antigens could have decomposed during the three-year lapse between the time of the incident and the time of her analysis, or that the swabs may have contained an insufficient amount of semen to detect antigens.

At the hearing on the motion for postconviction relief, defendant also produced the testimony of the comptroller of the Missouri Public Defenders' State Office, who testified that money was available to the public defenders to perform laboratory analyses, though defense counsel made no effort to avail himself of such service. Instead, defense counsel based his closing argument on the theory that defendant requested that tests be done to prove his innocence, but he could not afford blood typing tests, and the State had the resources to perform them. Counsel further contended the defendant did not have the burden to prove his innocence, but the state had the burden to prove his guilt.[1] Defense counsel further based his argument on the erroneous assumption that the specimens collected at the time of the incident were no longer usable at the time of trial.

In ruling on appellant's 27.26 motion, the circuit court held:

> Movant has not shown he was prejudiced by Trial Counsel's failure to request comparison of Movant's blood and saliva to evidence obtained by the State in investigating this crime. Movant has steadfastly maintained he requested such test be performed but his request went unheeded by Counsel. The record at trial both in the cross-examination of the State's expert and in closing argument strongly suggests this was Trial Counsel's deliberate strategy to attribute the lack of such testing as a failure in the State's evidence. However, it is not necessary to determine either of these issues because the analysis and comparison performed at Movant's request in the course of this post-conviction proceeding established Movant was *not* prejudiced by Counsel's decision. Movant has placed great weight in his pleadings on the fact further testing excluded him as a donor of seminal fluid on the victim's bedsheet. However, there was semen recovered both from victim's vagina and anus. These findings tracked exactly with her testimony that she was both raped and sodomized. New testing did not exclude

1. Defense counsel was not called to testify at the evidentiary hearing on the 27.26 motion.

Movant as the donor of either of these far more significant evidentiary samples. Trial testimony indicated the victim had a boyfriend. There was no evidence offered either at trial or during this proceeding to suggest or establish that the sole source of the seminal fluid on the bedsheet was victim's assailant. Certainly had the further testing been completed prior to Movant's trial and admitted into evidence, the arguments of both counsel would undoubtedly have been different. Yet, that fact in no way establishes prejudice to Movant.

\*    \*    \*    \*    \*    \*

Movant further alludes to statements by Trial Counsel in closing argument to the effect that Movant had no money to perform these tests and by the time Trial Counsel had entered the case the relevant evidentiary samples had dried up and were of no use. Certainly, these statements were not accurate. It serves no useful purpose to question the propriety of the statements having been made. If anyone was prejudiced by this inaccurate argument, it was the State. Since the tests were not performed, Trial Counsel's argument that Movant could not have performed the test and only the State had the resources at the time they could have been performed could not have prejudiced the jury *against* Movant.

■ When examining the motion court's ruling, we are mindful our review is limited to a determination whether its findings, conclusions and judgment are clearly erroneous, Rule 27.26(j), and they may be so found only if review of the entire record leaves the Court with a firm impression a mistake has been made. *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). A showing of ineffective assistance of counsel first requires that defendant show counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby; stated otherwise, that but for counsel's unprofessional conduct, there was a *reasonable probability* of a different result. *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Mallett v. State*, 769 S.W.2d 77, 82 (Mo. banc 1989), *cert. denied*, 494 U.S. 1009, 110 S.Ct. 1308, 108 L.Ed.2d 484 (1990). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S.Ct. at 2068.

■ Against these standards, we conclude counsel's failure to obtain the requested blood tests fell below reasonable and customary standards, and there was at least a reasonable probability of a different result had such test results been obtained. "Counsel has a duty to make reasonable professional investigations or to make a reasonable decision that makes particular investigations unnecessary." *State v. Griffin*, 810 S.W.2d 956, 958 (Mo.App. 1991). In this case, counsel's failure to pursue the evidence readily available to his office falls outside the range of reasonably competent professional behavior under the circumstances. *See State v. Wells*, 804 S.W.2d 746, 748–49 (Mo. banc 1991). Further, though the test results *may* not have changed the result, that very real probability cannot be ignored, and meets the minimum standard of undermining confidence in the outcome of the case. *See Perkins– Bey v. State*, 735 S.W.2d 170, 172 (Mo.App. 1987). Examining the facts and circumstances before counsel, the serological evidence that appellant could not have been the source of the semen found on the sheet, together with the inconclusive analysis of the samples taken from the victim, gives rise to a *reasonable probability* that a different result may have obtained.

Relying upon *Toney v. State*, 770 S.W.2d 411, 414 (Mo.App.1989), respondent would have us dismiss counsel's conduct as trial strategy. In *Toney*, defense counsel similarly was charged with ineffective performance in failing to obtain an analysis of spermatozoa found on the rape victim, but there the court held:

Rather than taking the potentially devastating risk of having such an analysis show a positive or inconclusive result as to her client, trial counsel forcefully argued that the failure of the State to

show similarity between the blood types of the assailant and of movant constituted a failure to sustain the State's burden of proof ... Counsel's decision to attack the State's failure to conduct tests was reasonably within professional norms under the circumstances. Eliminating the distorting effect of hindsight, movant's allegations fail to overcome the strong presumption that counsel's tactic was sound trial strategy.

770 S.W.2d at 414. However, *Toney* is distinguishable on the facts. Taking into account, as we must, the entire record, we note the brevity of M.T.'s view of her assailant's countenance in a darkened room, and the incongruity of her testimony as to the attacker's voice, together with appellant's consistent denial that he was the perpetrator of the offense. Further, defense counsel based his closing argument on the erroneous assumption that he had no money for the laboratory testing and that the specimens were no longer usable at the time of trial. As stated by the United States Supreme Court in *Strickland,* 104 S.Ct. at 2066:

> [C]ounsel has a duty to make *reasonable* investigations or to make a *reasonable* decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for *reasonableness* in all the circumstances, applying a heavy measure of deference to counsel's judgments. (Emphasis added.)

In this case, counsel's conduct cannot withstand the test of reasonableness when he was mistaken as to the availability of the test procedures and when defendant, who consistently maintained his innocence, apparently asked repeatedly that tests be performed. With this shadow cast upon the case, and with the outcome of the trial therefore called to question, we hold the motion court was clearly erroneous in its finding that there was no prejudice to appellant within the meaning of *Strickland,* 104 S.Ct. at 2068.

The judgment is reversed and remanded.

ROBERTSON, C.J., and COVINGTON, BLACKMAR, BENTON and THOMAS, JJ., concur.

HOLSTEIN, J., dissents in separate opinion filed.

HOLSTEIN, Judge, dissenting.

Insofar as the majority is granting an outright reversal of the judgment without remand for further hearing, I respectfully dissent.

In a post-conviction proceeding, the trial court may choose to believe all, part, or none of the testimony of any witness. *See Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). This is true even though such testimony is uncontradicted. *Id.* Defendant was the only person to testify regarding his conversations with his attorney prior to trial. The majority opinion assumes that defendant was truthful in his testimony "that he repeatedly asked counsel that tests be conducted to establish his innocence." The majority also assumes counsel "was mistaken as to the availability of test procedures." The motion court specifically declined to make findings on those issues. The motion court is required to make findings of fact and conclusions of law on all issues presented. *Rule 27.26.*

The majority, without benefit of findings by the motion court, concludes that counsel made incompetent mistakes contrary to the wishes of his client. But if the fact finder disbelieved defendant, the record here does not exclude reasonable explanations for counsel's conduct. For example, counsel may have been supplied with reliable information by defendant or others indicating that such testing would do more harm than good to the defendant's case. If counsel had such information, he might have made a reasonable, strategic decision not to conduct the tests. Counsel might wisely have made an informed decision to argue that defendant's poverty prohibited obtaining the tests and that the state had the burden of proof. Under such circumstances, counsel's conduct would be the result of a sound, strategic decision. The state has no burden to persuade the fact finder that counsel's investigation and representation was reasonable. Defendant has the burden of establishing that counsel's decision

not to further investigate was unreasonable. *Chambers v. State*, 745 S.W.2d 718, 721 (Mo.App.1987). This Court should not take on the mantle of fact finder.

Especially noteworthy is the unexplained failure to call defense counsel as a witness at the Rule 27.26 hearing. He is obviously in the best position to explain his motives for not requesting the tests. I will not assume the trial court believed the defendant's testimony regarding what he asked his lawyer to do. I am also unwilling to assume the trial court believed counsel's arguments at trial were the result of a mistaken notion that test procedures were unavailable to defendant. In this proceeding, the defendant has the burden of establishing all issues by a preponderance of the evidence. *Rule 27.26(f)*. The case should be remanded to the trial court for further hearing and a finding as to whether the defendant requested counsel to obtain the tests and whether counsel's decision not to obtain the tests was based upon a mistake. There may be evidence that is more persuasive than defendant's self-serving testimony. Both defendant and the state should be given the opportunity to submit additional evidence on the questions if such evidence is available.

For these reasons, I would reverse and remand for additional hearing, findings of fact, conclusions of law, and entry of judgment consistent therewith.