**Danny R. WOLFE, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SC 84259.

Supreme Court of Missouri,
En Banc.

Feb. 11, 2003.

Melinda K. Pendergraph, Assistant State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for Respondent.

RICHARD B. TEITELMAN, Judge.

Danny Wolfe [1] (Wolfe) was found guilty of two counts of first degree murder, two counts of armed criminal action, and first degree robbery. He was sentenced to death on the murder counts and consecutive life terms on the remaining counts. This Court affirmed Wolfe's convictions and sentences on direct appeal. *State v. Wolfe*, 13 S.W.3d 248 (Mo. banc 2000). Wolfe then filed a Rule 29.15 motion to vacate his convictions and sentences due to ineffective assistance of counsel. The motion was overruled, and Wolfe appeals. This Court has jurisdiction over the appeal. *Mo. Const. art. V, section 10; order of June 16, 1988.*

The judgment of the motion court overruling Wolfe's Rule 29.15 motion is reversed as to both the guilt and punishment

---

1. The record indicates that Wolfe spells his first name Dannie.

phases of Wolfe's trial, and the cause is remanded.

## Background [2]

Leonard and Lena Walters were found murdered at their home in Greenview, Missouri, on February 23, 1997. Mr. Walters was found dead in the front passenger seat of his car, shot in the back of the head with a .25 caliber gun. Mrs. Walters was found dead inside their home with a shotgun wound to her chest and multiple stab wounds.

Four days later the police received information from Jessica Cox (Cox), who claimed to have witnessed the murders and implicated Wolfe.[3] For her cooperation, Cox received full immunity. Cox maintained that, under pressure from Wolfe, she and Wolfe went to Mr. and Mrs. Walters' home to rob them. Cox claimed that she was surprised when Wolfe shot Mr. Walters from the back seat while Cox was driving a car that Mr. Walters was offering for sale. Then, Cox stated that she waited outside the home while Wolfe killed Mrs. Walters.

In a dumpster at Wolfe's motel, police found a .25 caliber cartridge and a bag containing two boxes of .25 caliber rounds.

At trial, the State emphasized Cox's testimony. The State called a local bartender, who testified that Wolfe offered to sell him a .25 caliber handgun about a week before the murders. The State also called Paul Hileman, a felon with a history of serious mental illness, who shared a cell with Wolfe. Hileman testified that Wolfe confessed the murders to him.

None of the physical evidence directly linked Wolfe to the killings. The police obtained fingerprint, footprint, tissue, blood and hair evidence, yet none of it implicated Wolfe. The clothes that Cox indicated Wolfe had worn were discovered and were not bloody, despite the victims' extensive blood loss. Wolfe's clothes were free of any fibers that would tie him to the crime scene. Wolfe's gloves did not have hair, fiber, gunpowder or blood on them. A firearms expert could not say whether the cartridges recovered from the dumpster outside Wolfe's motel were from the same lot as the cartridges found at the crime scene.

The theory of Wolfe's defense was that Cox was not credible and that she framed Wolfe. Wolfe's counsel presented witnesses who testified that Cox's testimony as to when the murders occurred could have been false. Wolfe's counsel also presented four impeachment witnesses who testified against Cox's reputation in the community for truthfulness.

Wolfe was convicted and sentenced to death. Pursuant to Rule 29.15, Wolfe timely filed a motion for post-conviction relief arguing that he received ineffective assistance of trial counsel. The motion court held an evidentiary hearing before issuing its findings of fact and conclusions of law overruling Wolfe's motion. This appeal followed.

## Standard of review

■ This Court's review of Wolfe's claims is for the limited purpose of determining whether or not the motion court clearly erred in making its findings of fact

2. For a full-length account of the facts, see *Wolfe,* 13 S.W.3d at 252–255, 267–273.

3. This was not Cox's first version of the events. She initially lied to her fiancé (who had noticed that Cox was out all night with another man) and several others that she had been kidnapped by a man named Frank and the kidnapper had been caught.

and conclusions of law. *Skillicorn v. State*, 22 S.W.3d 678, 681 (Mo. banc 2000).

■ To prove that counsel was ineffective, a defendant must show that counsel's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney" and that the defendant was thereby prejudiced. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ To demonstrate prejudice, a defendant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.* A "defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice...." *Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). Rather, the question is whether the deficiency "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

■ This Court presumes that counsel acted professionally in making decisions and that any challenged action was a part of counsel's sound trial strategy. *Id.* Review of the motion court's judgment does not relate to the propriety of the trial court's actions with regard to an alleged error, but whether the defendant has suffered a genuine deprivation of his right to effective assistance of counsel, such that this Court's confidence in the fairness of the trial is undermined. *Deck v. State*, 68 S.W.3d 418, 428 (Mo. banc 2002).

### Hair

Cox's testimony was the foundation of the State's case against Wolfe. Evidence that Cox's hair was found in the back seat of Mr. Walters' car and in one of the boxes of ammunition could have been the foundation of Wolfe's defense that Cox was lying.

Cox testified that she was sitting in the driver's seat of Mr. Walters' car when Wolfe shot him from the back seat and that she was never in the back seat. She also testified that she never handled the gun. Cox's testimony that Wolfe was the primary actor in the killings was bolstered by the evidence that police found ammunition of the same caliber that killed Mr. Walters in the dumpster outside Wolfe's motel, where the State argued that Wolfe had disposed of it.

Police discovered human hairs in the back seat of Mr. Walters' car and in one of the ammunition boxes found in the dumpster. The prosecutor informed Wolfe's counsel that he was not sure whether samples of Cox's hair had been seized and that no testing had been conducted. Shortly before trial, Wolfe's counsel learned in a deposition of Cox that samples of Cox's hair had been taken. Wolfe's counsel then filed a motion asking for reports concerning the taking of the samples from Cox. The prosecutor replied that he was "not too sure if Ms. Cox had her hair and blood taken." Resting on this vague answer, Wolfe's counsel resorted to arguing at trial that hair had been found in the car and dumpster, and that it was not Wolfe's. The argument was entirely speculative.

In fact, the police had seized samples of Cox's hair. A post-trial microscopic comparison of the hair samples taken from Cox with the hair found in the back seat of the car and the box of ammunition revealed only similarities to Cox's hair and no dissimilarities. A criminalist testified before the motion court that, to a reasonable degree of scientific certainty, the hairs found in the car and dumpster were

Cox's and not Wolfe's. The criminalist's testimony was essentially uncontroverted.

## Ineffective assistance

■ Wolfe's counsel merely argued, with no supporting evidence, that the hairs found in the car and dumpster were not Wolfe's. This type of unsupported argument is justifiably rejected by a jury.

Support for counsel's argument was readily obtainable. Wolfe's counsel could have either pressed the State to clarify whether it possessed hair samples taken from Cox, or Wolfe's counsel could have sought to obtain new samples of hair from Cox. Wolfe's counsel could have easily arranged for a scientific comparison of Cox's hair to the hairs found in the car and dumpster. Given that Wolfe has consistently maintained his innocence, and the defense theory that Cox was lying, the decision to avoid testing the hair samples cannot be justified as sound trial strategy.

The results of the hair analysis would have likely cast doubt on Cox's credibility. But for Wolfe's counsel's inaction, the jury would have received testimony from a criminalist that there was physical evidence that Cox was in the back seat of the car (where the killer would have been) and that Cox had some contact with the .25 caliber shells found in the dumpster. This evidence would have directly contradicted Cox's testimony and supported Wolfe's defense that Cox was framing him.[4]

In *Moore v. State*, 827 S.W.2d 213 (Mo. banc 1992), this Court addressed a similar failure of counsel to pursue important physical evidence. Moore was convicted of rape, sodomy and burglary. *Id.* His conviction was upheld by this Court on direct appeal. *Id.* at 214. However, Moore's attorney had failed to investigate Moore's blood type for comparison with specimens obtained from the victim's apartment. *Id.* The testing performed after Moore's conviction firmly established that someone other than Moore produced the specimens. *Id.* This Court held that Moore's "counsel's failure to obtain the requested blood tests fell below reasonable and customary standards, and there was at least a reasonable probability of a different result had such test results been obtained." *Id.* at 215. Moore's "counsel's failure to pursue the evidence readily available to his office falls outside the range of reasonably competent professional behavior under the circumstances." *Id.* This Court reversed Moore's conviction and remanded the case. *Id.* at 216.

Here, as in *Moore*, counsel's failure to test the hair samples (until after Wolfe had already been convicted) falls outside the range of reasonably competent professional behavior. Wolfe was ineffectively assisted by his trial counsel.

## Prejudice

■ Given the other evidence in support of Wolfe's defense, it cannot be assumed that the jury would have found Cox credi-

4. Before this Court, the State argues that it is "reasonably probable that Cox's involvement was less sterile than her trial testimony indicated, i.e., that Cox minimized her actions and omitted certain, perhaps personally embarrassing entanglements between her and appellant." The location of Cox's hair indicates much more than "personally embarrassing entanglements." This evidence indicates that Cox's involvement with the crimes was greater than her testimony acknowledged.

Cox's omitted or minimized "entanglements" were with the ammunition supposedly thrown away by Wolfe and with the position in the car from which Mr. Walters was killed. At trial, the State emphasized the immunity agreement it entered into with Cox to give "truthful testimony." The State's concession that there is a reasonable probability that Cox's testimony both minimized her actions and omitted aspects of her relationship with Wolfe is cause for serious concern.

ble once it learned the true origin of the hairs.

On direct appeal this Court applied the appropriate standard of review—accepting as true all evidence favorable to the State, including all favorable inferences from the evidence, and disregarding all evidence and inferences to the contrary. *Wolfe,* 13 S.W.3d at 252. However, when the record is viewed as a whole, the evidence of Wolfe's guilt is not overwhelming. Physical evidence that Cox's hair was found in a location that she testified she had not been, and physical evidence that Cox interacted with the ammunition, creates a reasonable probability of a different result. Therefore, Wolfe's counsel's ineffective assistance prejudiced Wolfe's defense.

### Conclusion

After reviewing the evidence that was not presented to the jury due to Wolfe's ineffective assistance of counsel, and considering the entire record, this Court's confidence in the fairness of the trial and the reliability of Wolfe's conviction is seriously undermined.

Therefore, the judgment of the motion court overruling Wolfe's Rule 29.15 motion is reversed as to both the guilt and punishment phases of Wolfe's trial, and the cause is remanded.[5]

All concur.

---

5. As the motion court's judgment is reversed, the other claims of error raised in this appeal