**Michael BELL, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 25432.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 12, 2003.

---

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. & Stephanie Morrell, Asst. Atty. Gen., for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant Michael Bell ("Movant") appeals a judgment denying his Rule 29.15 motion for post-conviction relief from his conviction for robbery in the first degree, § 569.030.[1] Movant alleges the motion court erred in denying his motion because his trial counsel was ineffective for failing to investigate and call a witness who would have provided an alibi. We affirm.

An account of the facts leading to Movant's conviction and sentence can be found in his direct appeal. *See State v. Bell*, 66 S.W.3d 157 (Mo.App.2001). In that case, we summarized the following facts as set forth at trial:

> Shortly after midnight on June 6, 1998, Kellett's Oil, a gas station in Sikeston, Missouri, was robbed and the clerk working there was shot and subsequently died. Based primarily on information provided by Michael Hatcher ("Hatcher"), who admitted to taking part in the robbery, the State ultimately charged [Movant] on November 24, 1999, with the following crimes: Murder in the first degree (§ 565.020), armed criminal action (§ 571.015), and robbery in the first degree (§ 569.020).
>
> Summarized, Hatcher's at-trial testimony about [Movant's] involvement was that near midnight on June 5, 1998, [Movant], Hatcher, Orlandis Farr ("Farr"), and Darius Nicholson ("Nicholson") agreed to rob Kellett's Oil. Hatcher, who was driving, parked in an alley. The four persons then donned caps and bandanas to cover their faces and walked to the gas station to carry out their planned robbery. During the robbery, Hatcher heard a gun shot and when he looked back, he saw [Movant] and Nicholson running from the station. Hatcher also saw that the clerk had been shot and was lying on the floor. As the four robbery participants fled, they discarded their caps and bandanas.
>
> * * *
>
> On November 24, 1999, the State charged [Movant], Farr, and Nicholson each with one count of murder in the first degree, armed criminal action, and robbery in the first degree. The State pursued the armed criminal action and robbery in the first degree charges

---

1. All rule references are to Missouri Rules of Criminal Procedure (2002). All statutory references are to RSMo 1994.

against [Movant] and Farr as co-defendants, but elected to proceed against them on a murder in the second degree charge instead of murder in the first degree. The trial was held August 15–18, 2000. The jury acquitted [Movant] and Farr of the murder in the second degree and armed criminal action charges, but convicted both of them on the robbery in the first degree charge. *Id.* at 160–61 (footnote omitted).

Movant alleged in his Rule 29.15 motion that his trial counsel was ineffective for failing to investigate and call Tiesha Mallory ("Mallory"), a witness whom Movant contends would have provided an alibi.

At Movant's Rule 29.15 evidentiary hearing, he presented the testimony of his ex-girlfriend, Mallory. Mallory testified that she and Movant often stayed together during June 1998. She further testified that on the morning of June 6, 1998, when Movant drove her to work, she noticed the yellow police tape around the gasoline station. Mallory stated that she was with Movant the night before and that they went to bed around midnight. Mallory further testified that had Movant left during the night, she would have been awakened and would have been made aware of his departure.

Mallory also testified she moved to Georgia in March 2000 and was living there during Movant's trial. She stated that she was once told by her father that, while she was out, a lawyer had called for her regarding Movant's case, but that the lawyer did not leave a name or number for her to contact him. Mallory related she would have testified at Movant's trial if she had been called to do so.

Movant testified at the evidentiary hearing via deposition. He related he informed his trial counsel, Steven Wilson ("Wilson"), he was with Mallory at the time of the robbery and provided Wilson

with Mallory's address and telephone number in Georgia. Movant also related that he had conversations with Mallory while he was awaiting trial and she was in Georgia, that he told her the trial date, and that Mallory assured him she would testify on his behalf.

At trial, Sheila Brown ("Brown"), Mallory's mother, testified she also noticed the yellow police tape around Kellett's Oil gasoline station on her way to work one morning in June 1998. She further testified that Movant had been at her home the night before and that the family spent the evening watching television and movies. Brown also related that Movant took Mallory to work the following morning.

Wilson testified that Movant did give him Mallory's name as a possible alibi witness, but that Movant did not give him a phone number until late July 2000, approximately three weeks before trial. Wilson further testified that he made a number of calls to Mallory and left several messages for her in an attempt to secure Mallory's testimony but was never able to speak to her. Wilson related that he was able to contact Mallory's mother, Ms. Brown, who informed him Mallory would not be able to testify.

Appellate review of a motion court's judgment on a Rule 29.15 motion is limited to deciding "whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). A motion court's findings and conclusions are clearly erroneous only if a full review of the record leaves the appellate court with a definite and firm impression that a mistake has been made. *Knese v. State,* 85 S.W.3d 628, 631 (Mo. banc 2002).

To prevail on a claim of ineffective assistance of counsel, a movant must show: (1) that trial counsel failed to exercise the customary skill, care, and diligence of a

reasonably competent attorney under similar circumstances; and (2) that counsel's deficient performance prejudiced the defense. *Wolfe v. State*, 96 S.W.3d 90, 93 (Mo. banc 2003). Prejudice is shown where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

"When an appellate court reviews a Rule 29.15 case, it indulges a strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance." *Barker v. State*, 83 S.W.3d 677, 681 (Mo.App.2002). "Our 'scrutiny of counsel's performance must be highly deferential,' and the strong presumption serves to eliminate 'the distorting effects of hindsight.'" *Bright v. State*, 4 S.W.3d 568, 569 (Mo.App.1999) (quoting *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)).

■ To prevail on a claim of ineffective assistance of counsel based on the failure of counsel to investigate and call a witness, Movant must show (1) that trial counsel knew or should have known of the witness's existence; (2) that the witness could have been located through reasonable investigation; (3) that the witness would have testified if called; and (4) that the witness's testimony would have provided a viable defense. *State v. Harris*, 870 S.W.2d 798, 817 (Mo. banc 1994); *see also Bucklew v. State*, 38 S.W.3d 395, 398 (Mo. banc 2001).

■ There is no question that Wilson knew of Mallory's existence as a possible witness. However, there is an abundance of evidence that Mallory could not be contacted through reasonable investigation and effort. Wilson's testimony indicated a substantial delay receiving Mallory's contact information from Movant. Additionally, Wilson testified to his numerous attempts to contact Mallory, including phone calls and messages that were not returned. Furthermore, Wilson was informed by Brown that Mallory would not be coming back to Missouri to testify.

Based on our review of the record, we are unable to say that the motion court erred in denying Movant's Rule 29.15 motion because there is ample evidence in the record supporting the motion court's findings of fact and conclusions of law. It is clear that the motion court simply did not believe Movant's testimony. The motion court is not required to believe the testimony of Movant, and we defer to determinations of credibility made by the motion court. *Peet v. State*, 22 S.W.3d 792, 796 (Mo.App.2000).

The motion court specifically found the testimony of Wilson to be more credible than the testimony of either Mallory or Movant. In so doing, the motion court noted the inconsistencies between Mallory's testimony and that of Movant. Mallory testified she did not give Movant her telephone number in Georgia because he had no way of calling her. Movant, however, testified that he called her repeatedly while she was in Georgia and gave Wilson her telephone number. Mallory also testified she and Movant discussed his whereabouts on the night of the robbery, prior to his arrest, when his name first started "floating around" in connection with the robbery. Meanwhile, Movant testified that he and Mallory first discussed his whereabouts on the night of the robbery approximately six months after he was arrested.

According to Wilson's testimony, he made a reasonable investigation and effort to contact Mallory, and the motion court is free to believe Wilson's testimony concern-

ing his efforts.[2] The motion court did not err when it implicitly found that Wilson's efforts to contact and procure the testimony of Mallory fell within the wide range of reasonable professional assistance. *See Barker*, 83 S.W.3d at 681. Point denied.

The motion court's findings of fact and conclusions of law are not clearly erroneous. The judgment denying Movant's Rule 29.15 motion is affirmed.

---

**2.** The record shows that Wilson had engaged in approximately 95 criminal jury trials in his career. The motion court noted that "as a result of trial counsel's experience and performance at trial," Movant "was acquitted of the more serious charges of murder in the first degree and armed criminal action."