**Uel Joe FREEMAN, Movant–Appellant,**

**v.**

**STATE of Missouri, Respondent–
Respondent.**

**No. 28751.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 2, 2008.

Rehearing Denied July 25, 2008.

(2006) unless otherwise noted.

Ellen H. Flottman, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Uel Joe Freeman ("Movant") appeals from a judgment in the Circuit Court of Butler County, Missouri, denying his Rule 29.15 [1] motion for post-conviction relief after an evidentiary hearing. Movant presents two points, each challenging the effectiveness of his trial counsel. Movant first alleges that the motion court erred in denying his motion for post-conviction relief because his trial counsel was ineffective for failing to object when a defense witness was asked on cross-examination to testify to alleged hear-say statements regarding threats made by Movant. Movant next alleges that the motion court erred in denying his motion for post-conviction relief because trial counsel was ineffective for failing to call two witnesses that could have provided testimony in support of Movant's self-defense theory. We find that the motion court did not err in denying Movant's motion for post-conviction relief.

The evidence indicates that on August 28, 2005, Aaron Collins, David Casten, Kuron Wallace, Michelle Wieller, and Cody Vaughn were at a residence where both Movant and Collins resided, watching television. At some point, Vaughn asked Casten for a ride to Wallace's home. Wieller asked Casten if he would also stop by her house while he was driving around to pick up a bag and suitcase for her. While Vaughn and Casten were at Wallace's house, Movant, who had been Wieller's boyfriend until the day before, approached Casten and asked for a ride back to his home, where Wieller was.

Casten, Vaughn, and Movant then drove to pick up Wieller's bags before returning to Wallace's home. After returning to Wallace's home, Movant got out of Cas-

---

1. All rule references are to Missouri Court Rules (2007), unless otherwise specified.

ten's vehicle, went to his nearby van, and then returned to Casten's vehicle with two knives and a bag that belonged to Vaughn. Movant got back inside Casten's vehicle in the rear passenger seat and put a knife to the throats of both Casten and Vaughn. Casten testified that when Movant put a knife to his throat he ordered him to take him to where Wieller was. Casten drove Movant to his and Collins' house, where he knew Wieller was located. Casten testified that Movant kept the knife on his throat for the entire drive, then, when they arrived at the house, Movant ordered Casten and Vaughn to stay outside and "not try anything stupid."[2] Movant left the car, went inside, and proceeded to his bedroom. When Movant entered the room, Wieller and Wallace were already inside. At that point, Movant, who was standing five to six feet from Wieller "holding" two knives, screamed, "If I can't have you, bitch, nobody can have you"; he began to approach her with the knives.

Wallace jumped up from his seat on a nearby bed and placed himself between Movant and Wieller. Movant stabbed Wallace in the arm and the two fell onto the bed. Wieller managed to get one of the knives from Movant, but saw Movant stab Wallace again in the torso. Movant ran out of the house, entered the driver's seat of Casten's car, and threw down the knife with which he had stabbed Wallace. Movant was unable to start the car because Casten had removed his keys from the ignition. At that point, Collins and Wallace stumbled out of the house. Wallace aimed a gun at Movant, but was unable to fire a shot. Movant then fled.

At trial, Movant was found guilty of one count of assault in the first degree, in violation of section 565.050,[3] and armed criminal action, in violation of section 571.015; Movant was sentenced as a prior and persistent offender to thirty years and ten years imprisonment. On appeal, the conviction was affirmed but remanded for re-sentencing, directing the trial court to exercise its judicial discretion regarding whether the sentence for armed criminal action would be concurrent or consecutive to the sentence for assault in the first degree. *State v. Freeman*, 212 S.W.3d 173, 177 (Mo.App. S.D.2007). The trial court re-sentenced Movant to a thirty-year imprisonment on the first-degree assault count, and a ten-year imprisonment on the armed criminal action count, with the sentences running consecutively. Movant then filed a timely motion for post-conviction relief pursuant to Rule 29.15. The motion court granted an evidentiary hearing in this case, which was held on August 17, 2007. The motion court issued findings of fact and conclusions of law denying Movant's request for post-conviction relief on September 11, 2007. This appeal followed.

On review of the lower court's ruling on a Rule 29.15 motion, we must affirm the ruling unless the findings of fact and conclusions of law reached by the lower court are clearly erroneous. *State v. Link*, 25 S.W.3d 136, 148 (Mo. banc 2000). The lower court's findings of fact and conclusions of law are presumed to be correct, unless a review of the entire record leaves this Court "with a definite and firm impression that a mistake has been made." *Id.* at 148–49. Moreover, "[t]he motion court is not required to believe the testimony of a movant and an appellate court must defer to the motion court's determi-

---

**2.** Movant was charged with kidnapping Vaughn and Casten and was acquitted of those charges.

**3.** All references to statutes are to RSMo 2000, unless otherwise specified.

nation of credibility." *State v. Dunmore*, 822 S.W.2d 509, 512 (Mo.App. W.D.1991).

For a claim of ineffective assistance of counsel to prevail, a two-part test must be satisfied. First, Movant must show that his trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; second, Movant must establish prejudice by showing a reasonable probability that but for counsel's errors, the results of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To satisfy the first prong of the *Strickland* test, [Movant] must overcome a strong presumption that counsel provided competent representation." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006). With regards to the second prong of the *Strickland* test, the question is whether the deficient performance undermined confidence in the outcome of the trial. *Wolfe v. State*, 96 S.W.3d 90, 93 (Mo. banc 2003). If a movant fails to satisfy either the performance or prejudice prong of the *Strickland* test, the motion court need not consider the other. *Sidebottom v. State*, 781 S.W.2d 791, 795–796 (Mo. banc 1989).

■ Movant's theory at trial was self-defense. Movant testified that Wallace pulled a gun on him and there was a confrontation; Movant stabbed Wallace after he tried to shoot Movant and the gun misfired. In his first claim of error, Movant argues that his trial counsel's failure to object to an alleged hearsay statement regarding threats made by Movant was prejudicial because the statement was harmful to his defense strategy. Movant also argues that further prejudice was caused when the prosecutor argued the hearsay statement in closing argument and trial counsel chose not to object.

The alleged hearsay came during the testimony of Charles Huitt, Vaughn's stepfather, who testified for the defense. Vaughn did not testify at trial. During the cross-examination of Huitt, the prosecutor asked,

> [Prosecutor]: Were you aware that [Movant] threatened Cody Vaughn?
>
> [Huitt]: I heard about it, yes.
>
> [Prosecutor]: Cody is not here today, is he?
>
> [Huitt]: No, sir.

Trial counsel did not object. During closing argument, the prosecutor said:

> His own witness knew about a threat against Cody Vaughn by [Movant]. And [Movant] also threatened the Prosecutor Kevin Barbour. He has this thing about threatening people.
>
> . . . .
>
> Cody is not here. Couldn't be found. But, you got to remember this trial is full of people threatening people. [Movant's] own witness says I heard that Cody had been threatened by who? [Movant]. Yes.

Again, there was no objection.

At the evidentiary hearing, Movant's trial counsel testified that his theory of defense at trial was self-defense. He recalled that Movant had testified that he stabbed Wallace because Wallace had pulled a gun on him and also recalled that the State's witnesses denied the presence of a gun during the incident. Trial counsel recalled the testimony of Huitt and his statement regarding Movant threatening Vaughn. Trial counsel testified that he did not object because they were Movant's statements offered by the State, so he did not believe the statement was hearsay but rather was admissible as a party admission. In hindsight, trial counsel conceded that Huitt had not indicated the person

from whom he heard that Movant was threatening Vaughn.

Trial counsel testified that Vaughn was a witness that had been at the home where Wallace had been stabbed earlier in the day, but had left before the stabbing occurred. Trial counsel was aware that the prosecutor, in his closing statement, argued that Movant made many threats; however, he did not object to the argument because he felt that Movant had testified and other evidence regarding Movant making threats had come in. Specifically, evidence regarding a letter Movant wrote to the prosecutor that had been classified as a threat was admitted. Trial counsel stated, "it was something I just had to deal with and try to explain away."

The motion court found:

[a]lthough the statement of a threat may have been hearsay, and stricken upon objection and motion; yet, if the issue had been further developed, it may not have been hearsay. An objection would have highlighted the testimony and been more damaging to [M]ovant's cause than it was without an objection. Whether trial counsel did not object because of trial strategy or inadvertence, the testimony and argument did not result in a substantial deprivation of [M]ovant's right to a fair trial.

We find no error in the motion court's finding.

Trial counsel had no knowledge whether the witness himself had heard threats by Movant toward Vaughn. In the absence of that knowledge, trial counsel exercised sound trial strategy not to highlight the statements. Additionally, Huitt's testimony was not the only testimony regarding threats, thus it was cumulative. The jury had already heard about a threat that Movant allegedly made to Vaughn from Casten, the first witness called by the prosecution. Specifically, Casten, who was in the car with Vaughn when the alleged threats were made, testified to every detail of the threat, including how Movant allegedly held knives to their throats. Further, the jury heard evidence from Movant himself regarding the alleged threat to Vaughn and other threats that Movant made to people other than Vaughn. The jury heard testimony on the issue of threats, therefore, testimony of Huitt was cumulative and not prejudicial. Movant's trial counsel was not ineffective for not objecting to Huitt's statements. Point one is denied.

■ Movant's second point on appeal claims ineffective assistance of counsel for failing to call Aaron Collins and Shawn Tutor to testify on his behalf. At the evidentiary hearing, Tutor's deposition was received into evidence and Collins testified. Tutor testified that if he had been called as a witness, he would have testified that he went to the home of Movant and Collins on the date of but prior to the incident, and saw guns in the home, including a pistol on the floor beside Wallace. Tutor testified that Wallace attempted to pick up a pistol and put it underneath a couch cushion in the living room.

Tutor testified that after Wallace and Movant started talking, Movant told Tutor that he might want to leave because "things might get a little hairy right here." Tutor left, but went back over to the house later that day after the incident in question already occurred. Tutor testified that he had been subpoenaed for Movant's criminal trial and went to the courthouse the day of trial and sat outside in the hallway. At some point, Movant's trial counsel came out and told him he could leave, and that he was not going to be called because he would not be credible and he had convictions for theft of anhydrous ammonia and possession of a controlled substance.

Trial counsel testified that he spoke with Tutor on the phone and issued a subpoena for him to appear at Movant's trial; he believed Tutor would confirm that a gun was in the room, confirming Movant's account. Trial counsel issued the subpoena as insurance, because he was not sure what the State's case would be, and "the witnesses in this case were all over the place." Trial counsel told Tutor to be on standby to testify.

Trial counsel ultimately decided not to use Tutor at trial because, in addition to his substantial prior convictions for theft of anhydrous ammonia and possession of a controlled substance, trial counsel believed there would be an issue with bias because Tutor had a long-term relationship with Movant, whom he referred to as "Uncle Joe." Additionally, Tutor was not present for the actual stabbing, and trial counsel had been able to impeach all of the State's witnesses as they had contradicted and accused each other. He felt that Movant had testified to a "pretty consistent story," so he "didn't want to complicate things with Tutor." He testified that Tutor's testimony could be interpreted as Movant knowing that there was going to be trouble and that he was going to initiate it, which would have been contrary to his theory of self-defense. He did not want the jury to hear evidence that Movant was "going to come to the fight ready," which also contradicted Movant's story. Although trial counsel testified that the testimony of Tutor had good points, he stated that "it ran against my theory pretty badly"; he was more worried about Movant being impeached than he was concerned about countering Wallace.

As to the testimony of Aaron Collins, Movant claims Collins would have confirmed that Wallace had a gun when he was stabbed. Collins testified in person at the evidentiary hearing that he had been Movants friend for a while and that they had been living together in Poplar Bluff in August 2005. Collins testified that he was in Movants bedroom on August 28, 2005, when Wallace was stabbed. Collins testified that Wallace was on his back, with Movant on top of him, and Movant had a knife in his hand against the bed. Collins testified that there was a gun between their legs, which Movant asked him to remove. Collins removed the gun, but did not see either one of them with the gun in their hand. He testified that Movant yelled at Wieller to take the knives and then got up and backed out of the room. Collins further testified that he wasn't in his right mind and that he hardly remembered the altercation.

Collins testified that after Movant left, Wallace got up and asked Collins for his gun back. Collins gave the gun to Wallace, who went to the back porch, pointed the gun at Movant, and pulled the trigger that failed to fire. Collins said that he told an investigator from Movants attorneys office about this incident and that he also gave a deposition in which he testified to the same things. Collins testified that he was subpoenaed to appear at Movants trial and went to the courthouse, sat in the hallway, but was sent home.

Under cross-examination, Collins recalled that in his deposition of January 31, 2006, he testified that Movant burst into the room with two knives in his hands, in an offensive position, and was on top of Wallace, holding his arms and yelling, Get the gun. Collins admitted that he never saw Wallace with a gun until after Wallace was stabbed. Collins admitted that he was under the influence of drugs at the time of the stabbing. Collins deposition of January 31, 2006, was offered by the State and admitted.

Trial counsel testified that he became aware that Collins was an eyewitness to the stabbing, his investigator interviewed Collins prior to his deposition, and he re-

viewed the interview notes prior to deposing him. He recalled that Collins agreed to be at Movant's trial and that he spoke to Collins personally at the trial. He testified that he did not call Collins to testify but that he wanted him there in case something unexpected happened at trial. He decided not to call Collins to testify after his deposition, where he had added some facts that he had not mentioned to his investigator, such as Movant running into the room, opening the door, shouting at Wallace, and the fact that Movant was already armed with two knives. Because their defense was self-defense, he felt that this testimony would be more harmful than useful. Trial counsel testified that he did not dismiss Collins, but talked to him prior to trial, and said he was not sure when he would be called, so he got his cell phone number and told him if he needed him, he would give him a call.

The motion court found that trial counsel had decided as a matter of trial strategy not to call Collins as a witness because of his deposition testimony, which was that Movant had two knives in his hands when he came into the bedroom; that Movant was on top of Wallace; that he never saw either one with a gun in their hand; and that he was not in his right mind because of drugs at the time of the stabbing and remembered very little about it. We find no trial court error in this finding.

First, there was a clear difference in the testimony of the State's witnesses versus the defense witnesses regarding whether or not Movant entered the bedroom with knives already in his hands. Both Wallace and Wieller testified that Movant entered the bedroom in an offensive position with knives already in his hands. Likewise, Casten confirmed that Movant had knives in his possession when he testified that Movant had the knives with him in the car. Moreover, each of those witnesses was able to very specifically describe the knives and Movant admitted on the stand that the knives, as described by Wallace, Wieller, and Casten, did belong to him. On the defense side, Movant testified that he did not have knives when he entered his bedroom and that the knives were actually between his mattresses and it took two attempts at the mattress to retrieve them. Collins testified that he was in the room and he saw Movant enter with two knives in his hands, confirming the prosecution's story. Although he attempted to retract these statements at the evidentiary hearing, this inconsistency would have obviously come before the jury and become a detriment to Movant's case. This alone could be said to have been a sound reason not to call Collins to the stand. Point two is denied.

The judgment is affirmed.

LYNCH, C.J., and BURRELL, J., concur.